FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1138

**Short Case Caption** Ridge Corporation v. Kirk National Lease Co., et al.

**Filing Party/Entity** Ridge Corporation

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/04/2023

Signature: /s/ Christopher Tackett

Name: Christopher W. Tackett

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Ridge Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐　None/Not Applicable　　　　☐　Additional pages attached

| | | |
|---|---|---|
| Christopher Tackett | Bailey Cavalieri LLC | |
| Graycen Wood | | |
| John P. Miller | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐　Yes (file separate notice; see below)　☑　No　☐　N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑　None/Not Applicable　　　　☐　Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## Case No. 24-1138

**RIDGE CORP.,**
*Plaintiff-Appellee*

v.

**KIRK NATIONAL LEASE CO., TRUCK & TRAILER PARTS
SOLUTIONS, INC., ALTUM LLC,**
*Defendants-Appellants*

*Appeal from the United States District Court for the Southern District of Ohio
(Marbley, J.)*

---

## Appellee Ridge Corporation's Opposition To
## Appellant Altum LLC's Motion to Stay Preliminary Injunction

---

Christopher W. Tackett (0087776)
Graycen M. Wood (0102160)
**Bailey Cavalieri LLC**
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
Phone: 614.229.3286
Fax: 614.221.0479
ctackett@baileycav.com
gwood@baileycav.com

*Counsel for Appellee Ridge Corporation*

Appellee Ridge Corporation ("**Ridge**") presents this Opposition brief in response to Appellant/Defendant Altum LLC's ("**Altum**") November 22, 2023 Motion to Stay the preliminary injunction ("**Second Motion to Stay**"). Altum's Second Motion to Stay should be denied.

## I.     INTRODUCTION

For yet another time, Altum asserts inaccurate legal arguments and misstatements of fact to try avoiding responsibility for Appellees' transparent patent infringement. Altum's Second Motion to Stay seeks to allow Appellees to resume their patent infringement that the District Court appropriately halted. Staying the injunction would render the injunctive relief ordered below meaningless and essentially grant Appellees a victory on their appeal—dealing irreparable harm to Ridge even if this Court ultimately affirms the District Court. As a result, Altum has the burden to make a clear and convincing showing that Appellants are entitled to this extraordinary relief.[1]

Altum has not and cannot meet its burden. Instead of providing any support that could meet its high burden to stay the injunction, Altum attempts

---

[1] Notably, the District Court carefully considered Altum's request for a stay and denied it on November 20, 2023. (R. 83). *Id.*, p. 7, ("Defendants again rehash the same argument they previously made. * * * Because Defendants do not establish a strong likelihood that they will prevail on the merits of their appeal regarding Mr. Sharpe's testimony, the Cold Chain Patent's prosecution history, or Ridge's standing, this factor weighs in favor of denying the motion to stay").

to go deep into the weeds and prematurely argue the appeal before it is briefed. Making its efforts to summarily nullify the granted injunction even less persuasive—Altum heavily relies on multiple misrepresentations of the legal authority and portions of the record that it relies upon. Meanwhile the other two Appellants—apparently recognizing their inability to prove entitlement to a stay—did not join Altum's efforts to stay the preliminary injunction pending appeal.

Altum cannot satisfy the extraordinary burden required for a stay, especially when there is already a $165,000 bond set to preserve Defendants' interests throughout the injunction's pendency.

## II.    FACTUAL BACKGROUND

On October 6, 2015, the United States Patent and Trademark Office (USPTO) issued United States Patent No. 9,151,084 ("**'084 Patent**") to Cold Chain, LLC ("**Cold Chain**"). (Appx. 0001-0031). The '084 Patent relates to an insulated roll-up door for commercial trucks. On February 15, 2023, Ridge and Cold Chain entered into a license agreement granting Ridge an exclusive license for the '084 Patent. (R. 1, PageID 39-49). On May 1, 2023, Ridge and Cold Chain amended and restated the original License Agreement ("**License Agreement**") (Appx. 0260-0272) to even further expand Ridge's rights under the exclusive licensing arrangement and grant Ridge the right to sub-license its

3

rights. (Appx. 0261). Under Paragraph 14 of the License Agreement, both Ridge and Cold Chain can initiate suits for patent infringement, "but neither party shall have any obligation to do so." (Appx. 0264-0265). While Ridge must give notice to Cold Chain before initiating a patent infringement lawsuit, nothing in the License Agreement restricts Ridge's ability to file suit. In any event, Ridge "shall retain final control over any major strategic decisions and/or settlement of any such action." (*Id.*). If Cold Chain is not jointly involved it still must provide "all cooperation reasonably requested by" Ridge. (*Id.*). Prior to the Lawsuit, Ridge communicated its intention of filing suit to Cold Chain, and Cold Chain declined the option to proceed against Defendants.

On September 20, 2023, Ridge filed a Verified Complaint alleging patent infringement and other claims against KNL along with its affiliate Truck & Trailer Parts Solutions, Inc. ("**TTPS**"), and Altum in the Southern District of Ohio, Case No. 2:23cv3012 (the "**Case**"). (R. 1).[2] Ridge filed 17 supporting exhibits along with its Verified Complaint and also moved for a temporary restraining order and preliminary injunction. (R. 2). On September 22, 2023, the District Court conducted a hearing on the Motion for TRO and heard arguments

---

[2] KNL and TTPS are referred to collectively as "**KNL Defendants**." KNL, TTPS, and Altum are referred to collectively as "**Defendants**."

from counsel for all parties, before announcing that the District Court would grant a temporary restraining order. (R. 14).

On September 28, 2023, Altum filed a "Motion to Join Cold Chain, LLC" arguing Cold Chain was a necessary party for purposes of standing ("**Motion to Join**"). (R. 27).

On October 3, 2023, to extinguish any doubt about Ridge's allegation in Paragraph 20 of the Verified Complaint that Cold Chain had tendered all rights in the Case to Ridge, Ridge and Cold Chain executed an Acknowledgement to verify this. (R. 63-1, PageID 1439-1340). Among other things, the Acknowledgement states that "prior to September 20, 2023, Cold Chain communicated to Ridge its election not to bring or join in the Lawsuit. As such, Ridge has exercised its exclusive rights under the License Agreement in bringing the Lawsuit against the named Defendants." (*Id.* at Paragraph 5).

From October 3, 2023 to October 6, 2023, the District Court held a preliminary injunction hearing ("**PI Hearing**"). Before the hearing, the parties conducted expedited discovery and the parties identified expert opinion witnesses, with Altum presenting Jason Foster, KNL/TTPS presenting Sam Han, and Ridge identifying Richard Sharpe. (R. 57, Tr. 292; R. 59, Tr. 583). Prior to the PI Hearing, Ridge moved to exclude Messrs. Foster and Han, as both admitted they were not skilled in the relevant art of roll-up doors ("**Motions**

5

to Exclude"). (R. 41 and 42). Defendants, however, did not file any motion to exclude Mr. Sharpe. The District Court denied the Motions to Exclude, stating for "purposes of the preliminary injunction hearing, the witnesses meet the standard under Rule 702 and their testimony goes to the weight of the evidence and not admissibility." (R. 50). Foster, Han, and Sharpe are all lawyers who practice patent law. At the PI Hearing, Defendants did not object to Sharpe's qualifications to testify at any point. Regarding the content of Sharpe's testimony, Altum objected to only one question and said it believe the response would call for an infringement opinion, Ridge responded that there was no infringement opinion being sought, and the Court overruled the objection. (R. 56, Tr. 97-128). Sharpe testified about the claim chart he prepared (Exhibit P-16) and discussed general principles of patent interpretation and prosecution. Sharpe expressly did not testify or give any opinion on the legal issue of infringement.

On November 4, 2023, after holding four days of hearing and reviewing seven different briefs about Ridge's request for a preliminary injunction, the District Court released its opinion and order granting a preliminary injunction and denying the Motion to Join ("**Injunction Ruling**"). (Appx. 0001-0031, R. 77). In the 31-page Injunction Ruling, the District Court thoroughly analyzed the issues and facts, and found the KNL Door infringes the '084 Patent based

on the '084 Patent's plain language. (Appx. Tab C, R. 78). On November 4, 2023, Defendants filed in the District Court their original motion to stay asserting the same arguments made in this current motion. (R. 79). On November 20, 2023, the District Court denied Altum's first Motion to Stay. (Appx. Tab C, R. 83).

On November 22, 2023, Altum filed the Second Motion to Stay in this Court, which almost entirely re-hashes arguments the District Court rejected and fails to show Altum can meet its burden for the extraordinary relief that it requests.

## II.    Legal Standard for Stay of an Injunction Award.

Under Fed. R. App. P. 8(a)(1)A), an appellant may move for a stay in an appellate court, so long as the appellant first sought a stay from the trial court and was denied. To decide whether the movant has met its burden for this extraordinary relief, appellate courts should consider four factors:

1. Whether the stay applicant has made a strong showing that it is likely to succeed on the merits;

2. Whether the applicant will be irreparably injured absent a stay;

3. Whether issuance of a stay will substantially injure the other parties interested in the proceeding; and

4. Where the public interest lies.

*Obsidian Sols. Grp., LLC v. United States*, No. 20-1602C, 2021 U.S. Claims LEXIS 739, at *7 (Fed. Cl. Apr. 27, 2021) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987)).  It is well-recognized, however, that it is an extraordinary and drastic remedy for an appellate court order to de-activate a preliminary injunction and stay it pending appeal. *Newimar, S.A. v. United States*, 163 Fed. Cl. 240, 246 (2022) (citing *ACI Techs., Inc. v. United States*, 162 Fed. Cl. 39, 43 (2022)).

**III**. **Argument**.

**A.     Altum Cannot Prove that It's Likely to Succeed on the Merits**.

"This court reviews the grant or denial of a preliminary injunction for an abuse of discretion." *Liqwd, Inc. v. L'Oréal USA, Inc.*, 720 F. App'x 623, 625 (Fed. Cir. 2018) (citing *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1345 (Fed. Cir. 2008)). Abuse of discretion may be established by proving the "court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." *Liqwd*, 720 F. App'x at 625.

**1.     *Altum is unlikely to succeed on its lack of standing argument*.**

"[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated * * * would cause the party holding the exclusionary right to suffer

legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010).

If a patentee transfers all "substantial rights," it is treated as an assignment, and the licensee is deemed the patentee under 35 U.S.C. §281 for purposes of standing to sue for infringement. *Sicom Sys. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) (citations omitted). "While a licensee normally does not have standing to sue without the joinder of the patentee * * *, an exclusive license may be treated like an assignment for purposes of creating standing if it conveys to the licensee all substantial rights." *Sicom*, 427 F.3d at 976 (citing *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991)).

The Federal Circuit uses a variety of factors to determine whether all substantial rights have been transferred to a licensee to establish standing. *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1360-61 (Fed. Cir. 2010). The two most important factors in determining whether an agreement transfers substantial rights to render a transferee the owner for standing is the exclusive right to make, use, sell, and the right to sue. *Diamond Spin Master, Ltd. v. E. Mishan & Sons, Inc.*, No. 19cv9035 (DLC), 2019 U.S. Dist. LEXIS 210991, at *23 (S.D.N.Y. Dec. 6, 2019) (citations omitted).

The Federal Circuit has held that when a patent licensee does not place on the licensor the obligation to sue infringers and in fact negates such an obligation, there is no substantial right retained. *McNeilab, Inc. v. Scandipharm, Inc.*, 94-1508, 1996 U.S. App. LEXIS 19073, at *12 (Fed. Cir. July 31, 1996). In *McNeilab*, a license agreement provided that a licensor had no obligation to prosecute actions against third parties for infringement, while at the same time acknowledging the licensor's ability to do so, if it chose. *Id.* at *12-13. There, the Federal Circuit found the totality of circumstances suggested a transfer of all substantial rights when the licensor could "neither practice the licensed invention nor authorize anyone else to do so." *Id.* at *12. *McNeilab* also emphasized the difference in retaining substantial rights vs. incidental rights, the latter of which will not negate standing to sue. *Id.* at *13 (citing *Cf. Radionics, Inc. v. Elekta Instrument AB*, 1994 U.S. Dist. LEXIS 8778, 33 USPQ2d 1110, 1113 (D. Mass. 1994)). The clause in *McNeilab* did not transfer the licensor's right to sue in its own name or negate that right. *McNeilab*, 1996 U.S. App. LEXIS 19073, at *11. Rather, the clause expressly recited the retained right and allowed the licensee to proceed on its own only when the licensor failed to so. *Id.*

A licensor retaining the right to sue infringers also does not preclude finding that all substantial rights have been transferred when the retained right to sue is illusory. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir.

2000). In *Speedplay,* a licensor retained the option to initiate infringement proceedings. Despite this option, the Federal Circuit found that retained right was illusory because the licensee could render that right "nugatory" (or trivial) by granting any alleged infringer a sublicense. *Id.* at 1251. "Even though [Licensors] retained the right to sue, that right would not hinder [Licensee]'s enjoyment of the patent rights in any meaningful way." *Id.* As a result, this Court found in *Speedplay* Court found that the retained option to sue did not amount to "retention of a substantial right" to prevent standing. *Id.* at 1252.

The License Agreement between Ridge and Cold Chain is exclusive, meaning Cold Chain cannot grant another license of the '084 Patent to anyone else. Ridge also has the right—without any additional approval by Cold Chain— to sublicense to any manufacturer who meets Ridge's condition that the sublicensee purchase door panels from Ridge. Like in *McNeilab*, while Cold Chain as licensor did not fully give up its ability to participate in an infringement suit on the '084 Patent, there is an absolute negation of the requirement to do so. That makes Cold Chain's retention of any ability to sue incidental, not substantial.

Further, any continued ability of Cold Chain to sue related to the patent is illusory. Like in *Speedplay*, Cold Chain's ability to sue does not hinder Ridge's enjoyment of the '084 Patent in any meaningful way. If Cold Chain commenced

11

suit, Ridge could grant a royalty-free sublicense to the defendant, negating Cold Chain's ability to sue. Also, if Cold Chain initially files any case without Ridge, Ridge can join that action with Cold Chain, which triggers Paragraph 14 of the License Agreement under which Ridge **"retain[s] final control over any major strategic decisions and/or settlement of any such action**." (Appx. 0264-0265) (emphasis added). Ridge has complete control over any litigation, which makes any right of Cold Chain to sue illusory.

As the District Court correctly held, Ridge's ability to sue and control a lawsuit involving the '084 Patent is "unfettered." (Appx. 0029, R. 77). "Ridge can decide whether or not to bring suit, when to bring suit, where to bring suit, what claims to assert, * * * whether to settle the litigation, and the terms on which [to settle]." (*Id.*). Ridge can do all of this without Cold Chain's permission or input.

Also, as the District Court correctly noted, both before and after Ridge filed the Case, Cold Chain expressly disclaimed its right to be involved. (Appx. 0029-0030, R. 77). The Acknowledgment confirmed: "Cold Chain communicated to Ridge its election not to bring or join in the Lawsuit. As such, Ridge has exercised its exclusive rights under the License Agreement in bringing the lawsuit against the named Defendants." (R. 63-1).

**2.     *Altum is unlikely to succeed on its new burden of proof argument*.**

Altum next argues the District Court improperly shifted the burden to Defendants to disprove that the KNL Door contains insulating foam. (Second Motion to Stay[3], PageID 13-14). Altum insists it was Ridge's burden to prove the foam in the KNL Door was insulating by proving a specific R-value level, although no such value is required under the '084 Patent. (*Id.*, PageID 14). As a foundation for this argument, Altum attempts to improperly read limitations into the '084 Patent's independent claims that are not present in the claims. But, no specific R-value is required for the foam in a single panel roll-up to meet the '084 Patent's independent claims. (*Id.*). Similarly, Altum falsely states to this court in its Opening Appeal Brief that dependent Claim 10 defines insulation as "R-value ranging from about 14 to about 50." (*Id.* at PageID 34). This is a blatantly false and misleading statement. Claim 10 does not define "insulation" or "insulating"—rather, it is a dependent claim that gives examples of potential R-values that doors built under the patent may have. In fact, the specifications and claims for the '084 Patent disclosed several generic classes of insulating foam suitable for the '084 Patent's invention, including polyethylene, which is the foam type used in the KNL Door. (Appx. 0032-0038, Col. 4, ll. 9-22 and Claims 5-7, R. 1, PageID 31-37). Indeed, Altum's Dominic Grandominico

---

[3] Hereafter abbreviated in citations as "MTS."

admitted the foam in the KNL Door is a "PET foam," meaning polyethylene terephthalate, which is polyethylene foam consistent with the options listed in Claims 5-7. (R. 59, PageID 1300, Tr. 538:14-18). Further, Altum and its expert Jason Foster admitted there was no requirement for the thickness of the foam on the Accused Door and, that the insulating foam material was continuously present even in the door panel's compression gaps. (R. 59, PageID 1388, 1395).

The District Court did not shift any burdens. Rather, the District Court simply rejected Altum's improper attempt to use dependent Claim 10 to import limitations into the Patent's independent claims. Altum is unlikely to succeed on this assignment of error.

### 3. *Altum is unlikely to succeed on its prosecution history arguments.*

Altum improperly asserts that the prosecution history is as important for an infringement analysis (if not more important) than the patent claims and specifications. (MTS, PageID 14-17). To the contrary, the Federal Circuit has routinely found that claim interpretation begins with the claims themselves, and if the accused product clearly falls within the claim language, that is the end of the analysis. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950) ("If accused matter falls clearly within the claim, infringement is made out and that is the end of it."). This is because prosecution history "often lacks the clarity of the specification and is less useful for claim construction purposes."

*Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1348 (Fed. Cir. 2020) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc)). "[L]imitations cannot be read into the claims from the specification or the prosecution history." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).

Because prosecution history is less reliable, prosecution disclaimer must be clear, unambiguous, and unmistakable. *Baxalta*, 972 F.3d at 1348 (citing *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016)). Courts refuse to find disclaimer when an alleged disclaimer is inconsistent with what ends up in the granted patent's claims. *Baxalta*, 972 F.3d at 1349. The Federal Circuit also confirms that disclaimer should not be found when the examiner does not adopt the allegedly disclaiming language. *TriVascular, Inc. v. Samuels*, 812 F.3d 1056, 1064 (Fed. Cir. 2016). Prosecution disclaimer only applies when the purported disclaimers induce the patent to be granted. *Thales Visionix, Inc. v. United States*, 150 Fed. Cl. 486, 494 (2020).

Altum argues Cold Chain expressly disclaimed its invention having multiple rigid sections. (MTS, PageID 14-18). While Cold Chain initially tried to distinguish its invention as not having "multiple rigid hinged sections," the examiner refused such a limitation stating: "There is no support for the negative limitation/exclusionary proviso of the sections as not being rigid." (Appx.

1010). Cold Chain did not ultimately assert any language excluding multiple rigid sections and the '084 Patent's final version did not include such a limitation. (Appx. 0986). No language in the '084 Patent prohibits the door from being flexible along its length by using grooves in the door panel. (Appx. 0032-0038). Because Cold Chain abandoned any limitation excluding "rigid hinged sections," there is no argument for prosecution disclaimer. Further, testimony at the PI Hearing indicates that the KNL Door panel is flexible, even before the grooves are routed into the door panel to allow it to better traverse the door frame's track. (R. 57, Page ID 1014-1015)

Altum also claims Cold Chain disclaimed a sandwich panel by stating its door was comprised of "only two major layers." (MTS, PageID 16). This is completely inconsistent with the prosecution history. Not only did Cold Chain not foreclose additional layers, its application and every amendment included the dependent claim language allowing for an additional layer on top of the door's foam core. (Appx. 0987, 1046, 1082, 1108, 1166). This language is also found in Claim 9 of the final '084 Patent. At no time did Cold Chain disclaim additional optional layers on top of the foam material of the door.

The District Court in its Injunction Ruling did not find the prosecution history "irrelevant," as Altum misleadingly portrays. (MTS, PageID 15). Instead, the District Court reviewed Altum's numerous arguments based on

16

prosecution history and found the arguments were not persuasive. The District Court found Cold Chain had not disclaimed or abandoned multiple rigid hinged sections. (Appx. 0017-0018, R. 77). The District Court also reviewed Altum's argument that Cold Chain had disclaimed a three-layer panel under Claim 1 of the '084 Patent, and found that it lacked any merit, in part because the '084 Patent specifically allows for additional layers on top of the door's foam core. (*Id.*). Thus, contrary to Altum's misrepresentations, the District Court did not ignore the prosecution history—it just did not agree with Altum's legally incorrect arguments.

### 5.   *Altum is unlikely to succeed on its expert testimony argument.*

When a patent attorney provides testimony on claim construction, the Court has the discretion to adopt the expert legal opinion as its own, find guidance from it, or ignore it. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed.Cir.1995). "In many patent cases expert testimony will not be necessary because the technology will be 'easily understandable without the need for expert explanatory testimony.'" *Centricut, LLC v. ESAB Group, Inc.*, 390 F.3d 1361, 1369 (Fed.Cir.2004).

Patent lawyers may testify to other issues related to patents even if they are not of ordinary skill in the art involved. *Marical, Inc. v. Cooke Aquaculture Inc.*, D.Me. No. 1:14-cv-00366-JDL, 2017 U.S. Dist. LEXIS 140466, at *11 (Aug. 31,

2017) (patent lawyers may serve as experts for purposes of describing PTO practices and procedures); *In re Loestrin 24 Fe Antitrust Litigation*, 433 F. Supp. 3d 274, 306 (D.R.I.2019) ("Thus, so long as Mr. Lentz and Mr. Doll only evaluate these issues from their respective perspectives, and do not offer legal conclusions on technical patent issues, their opinions are allowed.").

*Sundance, Inc. v. Demonte Fabricating Ltd.*, holds only that it is an abuse of discretion for someone not skilled in the art to testify on the issues of "noninfringement or invalidity." 550 F.3d 1356, 1362 (Fed.Cir.2008).

Altum never filed a motion in limine to exclude Sharpe's testimony. At the PI Hearing, Altum objected to Sharpe testifying on his opinion on the ultimate issue of infringement. (R. 56, PageID 861, Tr. 99:7-22.). Ridge made clear that Sharpe would not be opining on the legal issue of infringement, the District Court overruled the objection, and Sharpe did not testify on the ultimate issue of infringement. (*Id.*). Sharpe's limited testimony related to authenticating the Claim Chart he created (R. 1, PageID 170-196) and general principles of patent law and prosecution. Sharpe answered questions from the District Court regarding how patent lawyers and examiners interpret certain terms. (R. 56, PageID 861, Tr. 99:9-22). Sharpe did not testify on the ultimate issue of infringement. (*Id.*). The District Court did not abuse its discretion by allowing Sharpe's testimony and considering it as the District Court saw fit.

Ironic enough to Altum's present arguments, Altum and KNL Defendants offered claim construction testimony from their experts Foster and Han—who also have no skill in the relevant art of roll-up doors. (R. 57, PageID 1059, Tr. Vol. II, 297:13-20, PageID 1068-1069, Tr. 306:22-25, 307:1-17; R. 59, PageID 1363, Tr. 601:7-13). When KNL Defendants' expert Han testified, Ridge objected to the extent he offered legal conclusions and was similarly overruled by the District Court. (R. 57, PageID 1068-1069, Tr. 306:22-25, 307:1-17). The District Court allowed and considered Han and Foster's testimony just the same as Sharpe's, also asking them questions related to term interpretation and patent law practices. As the District Court stated in its Injunction Ruling, the Court allowed each party's opinion witnesses to testify, but only gave the testimony the limited weight it deemed appropriate. (Appx. 0015, Fn. 15). As correctly cited in the Injunction Ruling, "[t]he judge can even advert to the testimony of patent law experts -- that is, patent lawyers -- for advice on the interpretation of claims." *Markman*, 52 F.3d at 991.

Altum is also incorrect to assert Ridge failed to offer other evidence in support of its claim construction. Nearly all non-lawyer witnesses provided testimony related to the Accused Door. Ridge specifically questioned the Defendants' witnesses related their arguments against infringement and successfully rebutted them. Furthermore, Ridge relied on the '084 Patent's plain

language and no opinion testimony is needed to construe the patent's claims against the accused KNL Door.

### C.    Altum Will Not be Irreparably Injured Absent a Stay.

"One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Summit Indus. Supply, LLC v. Triple Crown Consulting, LLC,* No. 1:20-cv-385, 2021 U.S. Dist. LEXIS 134399, \*7 (S.D. Ohio July 19, 2021). "If Defendants have suffered irreparable harm, it is because they invited it. Defendants 'cannot place [themselves] in harms (sic) way, and then later claim that an injunction should not issue because of costs which [they] must incur in order to remedy [their] own misconduct.'" *Handel's Enters. v. Schulenburg*, No. 4:18CV508, 2018 U.S. Dist. LEXIS 177655, at \*8 (N.D. Ohio Oct. 16, 2018) (citing *Midwest Guaranty Bank v. Guaranty Bank*, 270 F. Supp. 2d 900, 924 (E.D. Mich. 2003)).

Altum took a risk by basing a significant part of its business on technology that it knew the KNL Defendants did not have a patent on and for which it knew Ridge did have a patent. Any harm Altum suffers is of its own making and cannot form the basis of irreparable harm. The District Court imposed the bond for the injunction, which pursuant to Fed. R. Civ. P. 65(c), provides the

necessary security to a party later found to have been wrongfully enjoined or restrained.

**D.    A Stay Would Injure Ridge and Render Meaningless the Injunctive Relief the District Court Ordered**.

Unlike Altum, who has the bond to secure itself, Ridge will have no security if the Injunction Ruling is stayed pending this Appeal. Though Fed. R. App. P. 18(b) provides for a bond, any bond for a stay would not suffice because the injury suffered by Ridge is and has been found to be irreparable. Altum wants the stay so it can immediately continue producing panels for KNL, which would resume the precise irreparable harm that the District Court meant for the injunction to prevent.

Altum incorrectly asserts Ridge failed to present any evidence of irreparability and the District Court failed to cite to or describe irreparable harm in the Injunction Order. (MTS, PageID 19). To the contrary, Ridge put on ample evidence that the blatant and prolonged false marking by the KNL Defendants immeasurably affects markets and customers, particularly if Defendants are permitted to continue producing the infringing KNL Door during the pendency of this case. (R. 57, PageID 969, Tr. 207:5-14; PageID 971-72, Tr. 209:5-7; PageID 973, Tr. 211:21-24; PageID 976, Tr. 214:10-17; PageID 986, Tr. 224:9-13). Ridge also showed Defendants were actively working to expand their market share of roll-up doors, which is the market the '084 Patent gives Ridge

the right to exclude Defendants from. (R. 56, PageID 969, Tr. 207; PageID 992, Tr. 230). Ridge also provided point blank evidence of irreparable harm in the form of the KNL Defendants' letter to Ridge's potential business partner, Whiting Door Corporation. The "Barnes Letter" froze what was a promising deal with a major manufacturer. Yet, Altum argues Ridge's frozen relationship is evidence of a lack irreparable harm. (MTS, PageID 20). Just because Ridge is successful and does things the right way, does not mean it cannot be irreparably harm. Lastly, Ridge impressed on the District Court the irreparable harm that can occur from rushing a product to market and poisoning a product category in the truck and trailer industry for years. One of the reasons companies like Ridge invest in patents is to allow time for proper development and testing of a product, without inexperienced companies prematurely taking the same product to market and souring the customer base.

Contrary to Altum's argument, the District Court correctly found multiple grounds for irreparable harm and this factor weighs heavily against a stay.

### E.     The Public Interest Lies with Preserving Patent Rights, Not Subsidizing Wrongdoing.

In circumstances such as these, where Defendants have so clearly infringed a patent, a preliminary injunction serves the public interest by

maintaining the integrity of patents and decreasing patent infringement. *Young v. Lumenis, Inc.*, 301 F. Supp. 2d 765, 774 (S.D. Ohio 2004).

Altum claims the public interest is in favor of a stay through a reference to the importance of "full and free competition in the use of ideas…." (MTS, PageID 20). Competition is only free if it is fair. A stay of the Injunction Ruling would be the opposite of allowing fair competition. Rather, it would place a finger on the scale and allow parties found to be infringing and causing irreparable harm to just resume their wrongful acts. The public interest does not favor a stay preventing the Injunction Order.

## IV.  CONCLUSION

Altum fails to meet the necessarily heightened burden to effectively vacate the Injunction Ruling that was the culmination of the District Court's careful consideration of evidence presented in the TRO hearing, Injunction Hearing, and seven total briefs relating to the injunction. Altum's Second Motion to Stay should be denied. But, if the Court orders a stay, it should order Altum to post a significant bond under Appellate Rule 8(E) that patterns with the years' worth of irreparable harm that Ridge will sustain if Defendants are permitted to resume infringing.

Respectfully submitted,

/s/ Christopher W. Tackett
Christopher W. Tackett (0087776)
Graycen M. Wood (0102160)
**Bailey Cavalieri LLC**
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
Phone: 614.229.3286
Fax: 614.221.0479
ctackett@baileycav.com
gwood@baileycav.com

*Counsel for Appellee Ridge Corporation*

**FORM 30. Certificate of Service**

Form 30<br>July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 24-113

**Short Case Caption** Ridge Corp. v. Kirk National Lease Co.

---

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

---

I certify that I served a copy of the foregoing filing on  12/04/2023

by  ☐  U.S. Mail    ☐  Hand Delivery    ☑ Email    ☐ Facsimile
    ☐  Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
|  | See attached page. |
|  |  |
|  |  |
|  |  |
|  |  |

☑  Additional pages attached.

Date: 12/04/2023

Signature:  /s/ Christopher Tackett

Name:  Christopher Tackett

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Damion M. Clifford | dclifford@arnlaw.com |
| Gerhardt A. Gosnell II | ggosnell@arnlaw.com |
| Michael L. Dillard, Jr. | mdillard@arnlaw.com |
| Tiffany L. Carwile | tcarwile@arnlaw.com |
| Donald E. Burton | dburton@ficlaw.com |
| Melissa L. Watt | mwatt@ficlaw.com |
| Joshua A. Koltak | jkoltak@fgks-law.com |
| Michael J. Scarpelli | mscarpelli@fgks-law.com |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  24-1138

**Short Case Caption:**  Ridge Corp. v Kirk National Lease Co.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes  5179  words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 12/04/2023

Signature:  /s/ Christopher Tackett

Name:  Christopher Tackett

Save for Filing