## CASE NO. 24-1138

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FEDERAL CIRCUIT

### RIDGE CORP.,
*Plaintiff-Appellee*
v.

### KIRK NATIONAL LEASE CO., TRUCK & TRAILER PARTS
### SOLUTIONS, INC., ALTUM LLC,
*Defendants-Appellants*

*Appeal from the United States District Court for the Southern District of Ohio (Marbley, J.)*

### Appellee Ridge Corporation's Corrected
### Response to Appellant Altum, LLC's Brief

Christopher W. Tackett (0087776)
Graycen M. Wood (0102160)
**Bailey Cavalieri LLC**
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
Phone: 614.229.3286
Fax: 614.221.0479
ctackett@baileycav.com
gwood@baileycav.com

*Counsel for Appellee Ridge Corporation*

i

# EXEMPLARY PATENT CLAIM

An insulated overhead door that is designed to roll open and closed in tracks to cover a door opening having a top and a bottom, the insulating overhead door having a first outermost Surface, a second outermost surface opposite the first outermost Surface, a top surface, a bottom Surface, a first side Surface and a second side Surface, both the first outermost Surface and the second outermost Surface being larger than any of the top surface, bottom Surface, first side Surface and second side Surface, the door comprising:

a thermoplastic membrane comprising glass fibers and having a top side corresponding to the top of the door opening and a bottom side corresponding to the bottom of the door opening, the thermoplastic membrane forming the first outermost surface of the door; a sheet of foam insulating material directly attached to the thermoplastic membrane, the insulating material extending continuously from the top side to the bottom side of the thermoplastic membrane, the thermoplastic membrane and insulating material forming a panel that is approximately the size of the door opening to be covered, a length of the panel being the distance between the top side and the bottom side, the foam insulating material forming the second outermost Surface of the door, and wheels attached to the door allowing the door to fit into tracks to guide the opening and closing of the door, wherein the overhead door comprises only one of the panel, the panel being flexible along the entire length of the panel so as to be capable of approximating the curvature of curved tracks having a radius of curvature ranging from about 5 inches to about 25 inches, where the track has a first length positioned at an angle, $\theta$ relative to a track portion of a second length, wherein $\theta$ ranges from about 80° to about 125°.

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 24-1138 |
| **Short Case Caption** | Ridge Corporation v. Kirk NationaLease Co., et al. |
| **Filing Party/Entity** | Ridge Corporation |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/12/2024

Signature: /s/ Christopher Tackett

Name: Christopher W. Tackett

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Ridge Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable                    ☐   Additional pages attached

| | | |
|---|---|---|
| John P. Miller | | |
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)     ☑  No     ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable                    ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Table of Authorities ........................................................................ v

Statement of Related Cases............................................................ 1

Statement of the Issues ................................................................. 1

Statement of the Case ................................................................... 1

Summary of the Argument ........................................................... 9

Argument ..................................................................................... 16

      Standard of Review............................................................... 16

          I.    Ridge Has Standing to Bring Its Infringement Claims....... 17

               A.    Cold Chain Transferred the Right to Sue. ............... 19

               B.    Cold Chain Transferred the Exclusive Right to Make, Use, or Sell the '084 Patent's Invention. ....... 22

               C.    Cold Chain Transferred the Substantial Right to Sublicense the '084 Patent.................................... 23

          II.   Ridge Proved a Substantial Likelihood of Literal Infringement.................................................................... 25

               A.    The Accused Door Contains Foam Insulating Material as Claimed By the '084 Patent's Plain Language. ........................................................... 27

               B.    Altum's Reliance on Theories of Disavowal and Improper Broadening to Read Limitations into the Claims Have No Merit. .................................... 33

                    1.    The '084 Patent Does Not Require a Panel Made from Material Meeting the Vague New Limitation of being "Innately Flexible." .................................................... 38

2. The District Court Properly Construed Independent Claim 1 to Include the Compression Gaps of Dependent Claim 4. ................................................. 42

3. The District Court Did Not Improperly Construe the Claims as Including Three Layers. ......................................................... 44

C. Altum's Interposed Arguments that the District Court Erred By Allowing Sharpe to Testify Are Without Merit. ...................................................... 49

D. Altum's Validity Argument Is Not Properly Before the Court, and it is Incorrect. ........................ 50

III. Ridge Proved Irreparable Harm and that the Injunction Weighs In Favor of the Public Interest. ........... 52

A. Ridge Presented Specific Evidence of its Irreparable Harm. .................................................. 52

B. Any Harm to Altum is Irrelevant, and the Public Interest Weighs in Favor of the Injunction. .............. 58

Conclusion ................................................. 61

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Sandoz*, Inc., 544 F.3d 1341 (Fed. Cir. 2008) ..................... 14, 53

*Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010) ......................................................................... 10, 18, 24

*Apple Inc. v. Samsung*, 809 F.3d 633 (Fed. Cir. 2015).................................... 58

*Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960 (Fed. Cir. 2022)............................... 29

*ArtiCure, Inc. v. Jian Meng*, 2020 U.S. App. LEXIS 23763 (6th Cir. July 27, 2020) ................................................................................................... 59

*August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278 (Fed. Cir. 2011) ................ 29

*Bendix Comer. Vehicle, Sys., LLC v. Haldex Brake Prod. Corp.*, No. 1:09cv176, 2011 U.S. Dist. LEXIS 312 (N.D. Ohio Jan. 3, 2011)...................................... 54

*Blephex, LLC v. Myco Indus.*, 24 F.4th 1391 (Fed. Cir. 2022) ......................... 16

*Cf. Radionics, Inc. v. Elekta Instrument AB*, 1994 U.S. Dist. LEXIS 8778, 33 USPQ2d 1110 (D. Mass. 1994) ............................................................. 20

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) ................................................................................................... 35

*CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1382 (Fed. Cir. 2022)13, 34, 35, 41

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374 (Fed. Cir. 2006)30

*Diamond Spin Master, Ltd. v. E. Mishan & Sons, Inc.*, No. 19cv9035 (DLC), 2019 U.S. Dist. LEXIS 210991 (S.D.N.Y. Dec. 6, 2019) ................................. 18

*Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336 (Fed. Cir. 2013) 54

*DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743 (6th Cir. 2020) ................................................................................................... 16

*Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335 (Fed. Cir. 2009).............................. 36

*Enzo Biochem, Inc. v. Applera Corp.*, 780 F.3d 1149 (Fed. Cir. 2015)...........43, 45

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100 (3rd Cir. 1988) ..................................................................................... 58

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288 (Fed. Cir. 2009)............ 51

*Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014)... 13, 35, 41

*Hill ex rel. Hill v. Pa. Dep't of Corr.*, 521 F. App'x 39 (3d Cir. 2013).................. 17

*Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679 (Fed. Cir. 1990)................ 58

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050 (Fed. Cir. 1989)  41, 47, 52

*Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364 (Fed Cir. 2003)............... 45

*Kruse Tech. P'ship v. Volkswagen AG*, 544 Fed. Appx. 943 (Fed. Cir. 2013).29, 30

*Lackner Co. v. Quehl Sign Co.*, 145 F.2d 932 (6th Cir. 1944) ............................ 59

*LEGO v. ZURU Inc.*, 799 Fed. Appx. 823 (Fed. Cir. 2020) .........................14, 59

*Lexington-Fayette Urban County Gov't v. Bellsouth Telcoms., Inc.*, 14 Fed. Appx. 636 (6th Cir.)........................................................................................ 53

*Littelfuse, Inc. v. Mersen USA EP Corp.*, No.  2021-2013, 2022 U.S. App. LEXIS 8901 (Fed. Cir. April 4, 2022) ..........................................................42, 45

*Lochner Techs., LLC v. Vizio, Inc.,* 567 Fed. Appx. 931 (Fed. Cir. 2014) .......... 45

*Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343 (Fed. Cir. 2016). 21

*Macom Tech. Solutions Holdings, Inc. v. Infineon Techs. AG*, 881 F.3d 1323 (Fed. Cir. 2018)........................................................................................... 16

*Marical, Inc. v. Cooke Aquaculture Inc.*, No. 1:14-cv-00366-JDL, 2017 U.S. Dist. LEXIS 140466 (D. ME. Aug. 31, 2017).................................................. 49

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ... 27, 28, 50

*Mass. Inst. of Tech. v. Shire Pharms., Inc.*, 839 F.3d 1111 (Fed. Cir. 2016)......... 35

*McNeilab, Inc. v. Scandipharm, Inc.*, 94-1508, 1996 U.S. App. LEXIS 19073 (Fed. Cir. July 31, 1996) ......................................................10, 19, 20, 21

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005) .................................................................................. 57

*Metalcraft of Mayville v. Toro Co.*, 848 F.3d 1358 (Fed. Cir. 2017) ................... 53

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ................. 11, 27, 30, 50

*Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372 (Fed. Cir. 2000) ............ 23, 24

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359 (Fed. Cir. 2001) ............................................................................................ 53

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*, 716 Fed. Appx. 965 (Fed. Cir. 2017) ............................................................................................ 30

*Revision Mil., Inc. v. Balboa Mfg. Co.,* 700 F.3d 524 (Fed. Cir. 2012) ............... 16

*Sicom Sys. v. Agilent Techs., Inc.*, 427 F.3d 971 (Fed. Cir. 2005) ...................... 18

*Solvay S.A. v. Honeywell Int'l Inc.*, 742 F.3d 998 (Fed. Cir. 2014) .................... 45

*Southern Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844 (6th Cir. 2017) ................................................................................. 14, 53

*Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) ......................... 20

*Stauffer v. Brooks Bros. Group*, 758 F.3d 1314 (Fed. Cir. 2014) ....................... 51

*Summit Indus. Supply, LLC v. Triple Crown Consulting, LLC,* No. 1:20-cv-385, 2021 U.S. Dist. LEXIS 134399 (S.D. Ohio July 19, 2021) ............ 14, 54, 59

*Sundance, Inc. v. Demonte Fabricating Ltd.* 550 F.3d 1356 (Fed.Cir.2008).......... 49

*Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339 (Fed. Cir. 2020) ............................................................................................ 58

*Terves LLC v. Yueyang Aero. New Materials Co.*, No. 1:19-CV-1611, 2022 U.S. Dist. LEXIS 129059 (N.D. Ohio July 20, 2022) ....................................... 54

*Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012)..... 29

*TomTom, Inc. v. Adolph*, 790 F.3d 1315 (Fed. Cir. 2015) ................................. 17

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296 (Fed. Cir. 2010) ............................................................................... 57

*Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*, No. 2021-2319, 2023 U.S. App. LEXIS 16295 (Fed. Cir. 2023) ...................................................42, 45

*Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-00358 WHA, 2020 U.S. Dist. LEXIS 228257 (N.D. Cal. Dec. 4, 2020) .......................................................21, 24

*Uniloc USA, Inc. v. Motorola Mobility, LLC*, No. 17-1658-CFC, 2020 U.S. Dist. LEXIS 244512 (D. Del. Dec. 30, 2020)................................................... 21

*United Access Techs., LLC v. Verizon Internet Servs.*, No. 05-866-LPS, 2021 U.S. Dist. LEXIS 60149 (D. Del. Mar. 26, 2021)............................................ 17

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870 (Fed. Cir. 1991) ..........................................................................................18, 24

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377 (Fed. Cir. 2000) 44

*Vitronics Corp v. Conceptronic,* 90 F.3d 1576 (Fed. Cir. 1996) ........................... 28

*Warth v. Seldin*, 422 U.S. 490, 45 L. Ed. 2d 343 (1975) ................................. 17

*WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834 (N.D. Cal. 2019)................ 59

*WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257 (Fed. Cir. 2010) .................. 17

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012)........................................ 59

## STATEMENT OF RELATED CASES

1. No other appeal in or from the same civil action in the Southern District of Ohio was previously before this or any other appellate court.

## STATEMENT OF THE ISSUES

As to Altum's Issues 1 through 3, Ridge disagrees that the District Court committed error.

## STATEMENT OF THE CASE

In this patent infringement action, Appellee Ridge Corporation ("**Ridge**") brought suit against Appellees Kirk NationaLease Co., Truck & Trailer Parts Solutions, Inc. (collectively with Kirk NationaLease Co., "**KNL**") and Altum, LLC ("**Altum**"), alleging infringement of U.S. Patent No. 9,151,084 ("'**084 Patent**"). Ridge also brought claims for patent inducement and contributory infringement against Altum, tortious interference with business relationships against Altum and KNL, and false marking against KNL. (*See generally* Appx0050.)

The '084 Patent is titled Insulated Overhead Door and claims a single panel roll-up door for use in trucks and trailers. (*See generally* Appx0080.) Ridge licensed the '084 Patent from Cold Chain, LLC ("**Cold Chain**") on February 15, 2023. (*See generally* Appx0088, "**License Agreement**".) Ridge initiated a lawsuit in the U.S. District Court for the Southern District of Ohio ("**District**

1

**Court**") after it learned that KNL, with the help of Altum, was manufacturing, offering for sale, and selling a roll-up door that infringes upon the '084 Patent ("**Accused Door**" or "**KNL Door**"). The District Court granted Ridge's request for a preliminary injunction against KNL and Altum ("**Injunction Ruling**").

Pursuant to Fed. Cir. R. 28(b), Ridge includes below the areas of disagreement with Altum's Statement of the Case:

- Altum contrives an alleged patent requirement that the door must be "innately flexible" and that it cannot have "depressions." (Doc. 30, p. 14.) As explained in Section III.B.1 of Ridge's argument below, the '084 Patent only requires a door that is "capable of approximating the curvature of curved tracks[.]" (Appx0037, Col. 6 ln. 46-47.) Moreover, Claim 4 claims compression gaps to allow the foam to more easily bend. (Appx0037, Col. 6 ln. 57-60.) Altum also incorrectly states that the '084 Patent was granted because of its alleged two-layer construction without depressions, but the Notice of Allowance from the USPTO gave no such reasoning for allowing '084 Patent.  (Appx0970-972.) Among other reasons, the claims were allowed based on amendments distinguishing the prior art based on those inventions not having a second outermost surface formed by the foam insulating material as claimed.

- Although Altum asserts that PET foam has a low R-value of approximately 1.8, there was no conclusive evidence in the record to support the

2

R-value of the Accused Door. In fact, Altum has never tested or determined the R-value of the PET foam material or the Accused Door. (Appx0845-846, Tr. 561:14-562:2.)

- Altum claims that its door panel is rigid and not flexible, and it cannot traverse a curved track without modification. (Doc. 30, p. 17.) This claim does not save Altum from infringement. The '084 Patent only requires a door that is "capable of approximating the curvature of curved tracks," and the patent expressly permits modifications like compression gaps to allow the door to more easily bend across the door frame's curved tracks. (Appx0037, Col. 6 ln. 46-47; id. at Col. 6 ln. 57-60.)

- In footnote 2, Altum asserts that the District Court found Altum's panel was made from insulating foam without support. In fact, however, Ridge presented testimony that Altum's panel is insulating. (Appx0682, Tr. 398:16-18.) Thus, the record does contain support for the District Court's finding.

- Altum claims that Cold Chain disavowed having "grooves" (the compression gaps) in its design. (Doc. 30, p. 21.) This is not true of the claims as pending during prosecution or in the '084 Patent's allowed claims. In every version of the underlying application, there was always a dependent claim reciting that the single-panel door could have compression gaps in the foam to

allow it to bend more easily. (Appx0986; Appx1045; Appx1082; Appx1108; Appx1165.)

- Cold Chain did not disavow a sandwich panel. (Doc. 30, p. 22.) The USPTO repeatedly took the position that U.S. Patent No. 5,915,445 (“**Rauenbusch**”) teaches a single piece door that is inherently flexible because it can be rolled or coiled along a curved track. (Appx1011-1012.) It does not matter that Rauenbusch discloses a three-layer sandwich panel because it does not disclose a center core layer that is continuous and exposed, as required by the ‘084 Patent’s claims—and present in the Accused Door. (E.g., Appx0037, Col. 6 ln. 18-51.)

- In quoting from the specification, Altum hand-picks certain language to paint the door as requiring high insulation, which is not so. Importantly, the specification also states:

> **One or more** of the following advantages **may** be realized by the doors of the present disclosure: a door with a higher R-value for openings designed to utilize an overhead door that runs on tracks; elimination of horizontal seams in the door that result in air leaks and heat intrusion and cause a reduction of the overall thermal performance of the door; providing an improved, seam free door surface for affixing decals, logos or advertising information; providing a simpler door with fewer parts used for its manufacture than many existing doors and a reduction of maintenance costs; reducing the weight of the door to allow a trailer to carry increased amounts of freight; and providing a door that easily utilizes existing overhead track technologies.

(Appx0035, Col. 1 ln. 66 – Col. 2 ln. 11) (emphasis added). As stated in the specification and further explained below, not every potential advantage of the claimed door must be present in an embodiment.

- The District Court did not impute dependent claims into the independent claims, and nonetheless, Altum improperly included this argument in its alleged statement of facts. (Doc. 30, p. 24.)

- As Altum points out, Claim 10 is the only claim that makes any mention of a specific R-value. (Doc. 30, p. 25, citing Appx0038, Col. 7 ln. 6-7.) But, Altum incorrectly states that Claim 10 defines the term "insulation" for purposes of the '084 Patent. This is a blatantly false statement.

- Ridge disputes that KNL designed the roll-up door concept. (Doc. 30, p. 25) However, this fact is irrelevant to the controlling infringement issues.

- In footnote 5, Altum states that there is no support that one of Altum's founders worked on the roll-up door project while employed at Ridge. (Doc. 30, p. 25.) Yet, the record supports that Altum co-founder Greg Karst worked on a single panel roll-up door while employed at Ridge. (Appx0549, Tr. 265:2-10.)

- Although Altum states that Ridge offered to sublicense to KNL if KNL added Ridge as a co-inventor on KNL's separate patent application (Doc. 30, p. 25), this is not true. Ridge sent two separate letters to KNL, one asking it

5

to cease-and-desist its infringement (Appx0154-155) and a separate letter addressing the disputed inventorship on KNL's separate patent application (Appx0128-129).

- Altum did not object to Ridge's expert, Richard Sharpe's ("**Sharpe**") testimony as inadmissible or raise any objections to Sharpe's qualifications. (Doc. 30, p. 27.) Rather, Altum objected to one question and stated an objection to Sharpe opining on the ultimate issue of infringement, which he did not do. The objection exchange was as follows:

> MR. CLIFFORD: Objection, Your Honor.
> THE COURT: Basis?
> MR. CLIFFORD: It's basically the basis of the motion in limine.[1] They're asking for him to step in your shoes and determine whether there's infringement or not. And his testimony is not appropriate in this area.
> * * *
> MS. WOOD: We're not asking Mr. Sharpe to opine on legal conclusions. He will be relying on his technical expertise in the area, and he will not be opining as to the ultimate issue as to whether there is infringement or not infringement in this case.
> THE COURT: Your objection is overruled.

(Appx0383, Tr. 99:7-21.) Then, for the first time in its closing brief, Altum raised an objection to Sharpe's qualifications. (R.69 at 1485-86.) Any objection to Sharpe's qualifications to testify is not properly before this Court.

---

[1] The motion in limine referred to is Ridge's motion in limine to exclude Altum's expert witness Jason Foster and KNL's expert witness Sam Han. Defendants did not file a motion in limine regarding Sharpe.

- Altum brazenly asserts that Sam Han ("**Han**") is one of ordinary skill in the art of the single panel roll-up doors of the '084 Patent. (Doc. 30, p. 27.) Yet, Han concedes that he has no experience dealing with single panel roll-up doors. (Appx0605-606, Tr. 321:24-322:6.)

- Altum co-founder (ex-Ridge Board Member and employee) Dominic Grandominico, a lay witness, did not testify that the KNL Door does not contain all limitations set forth in the asserted claims of the '084 Patent. (Doc. 30, p. 27.) Instead, Dominic admitted that he is not a legal expert on patents and has never provided an opinion on a patent application. (Appx0836, Tr. 552:4-17.)

- Dominic Grandominico did not testify that he used the specification of the '084 Patent to create a demonstrative exhibit of what he thought an embodiment of the '084 Patent would look like. (Doc. 30, p. 27.) Instead, Dominic stated that he looked at a webpage from Cold Chain, created before the '084 Patent was filed. (Appx0798, Tr. 514:5-11; Appx0831-832, Tr. 547:15-548:5.) Even so, the District Court ruled that Dominic's demonstrative exhibit was excluded from evidence because commercial embodiments are irrelevant to claim construction. (R.67.)

- The District Court did not adopt Sharpe's claim construction. (Doc. 30, p. 28.) The District Court relied on the '084 Patent's plain language to find

7

the KNL Door literally infringes. (Appx0014-15.) The District Court also did not find that Cold Chain retained the right to sue under its license agreement. (Doc. 30, p. 28.) Instead, the District Court stated: "based on the language of the license agreement, Cold Chain intended for Ridge to be able to pursue a patent infringement suit without the need for Cold Chain to participate as a party in the litigation." (Appx0029.)

## SUMMARY OF THE ARGUMENT

Altum cannot show that the District Court abused its discretion by granting Ridge a preliminary injunction to enjoin Defendants' infringing conduct. Altum raises three unsuccessful and misleading arguments in its attempt to portray the Injunction Ruling as an abuse of discretion. Altum claims: 1) Ridge lacks standing to sue because Cold Chain retained the right to sue under the License Agreement; 2) Altum proved defenses of non-infringement and invalidity[2] via its prosecution disclaimer arguments; and 3) Ridge was not irreparably harmed, but Altum is irreparably harmed by the business it is losing because of the Injunction Ruling. Each of Altum's arguments fails upon applying the record facts to the governing law.

### Ridge Has All Substantial Rights In the '084 Patent.

Altum argues that because Cold Chain retains a limited right to sue under the License Agreement, Ridge does not have standing to sue on its own. In making this argument, Altum ignores the relevant analysis, which if considered, supports that Ridge holds all substantial rights in the '084 Patent. The Federal Circuit uses a variety of factors to determine whether all substantial rights have been transferred to a licensee to establish standing. *See Alfred E. Mann Found. for*

---

[2] Yet, Altum never raised a validity defense before the District Court.

*Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360-61 (Fed. Cir. 2010). Only one of those factors is the right to bring suit. Even so, the Federal Circuit has found that when a licensor retains the right to sue but is not obligated to do so, and the licensee has full rights to sue, then the licensor's retention does not affect the licensee's substantial rights. *McNeilab, Inc. v. Scandipharm, Inc.*, 94-1508, 1996 U.S. App. LEXIS 19073, at *11 (Fed. Cir. July 31, 1996).

Moreover, the right to sue is just one factor in the analysis that otherwise overwhelmingly weighs in Ridge's favor because Ridge has the exclusive right to make, use, and sell the '084 Patent's invention, the right to sublicense under the '084 Patent, and the right to receive all recovery from and direct the control of any infringement suit. Therefore, the law does not support Altum's narrow argument that Cold Chain's option to bring suit negates Ridge's substantial rights in the '084 Patent. Because Ridge retains all substantial rights in the '084 Patent, the District Court did not err in concluding that Ridge has standing to sue.

**The District Court Properly Interpreted the '084 Patent and Properly Found Altum's Disclaimer Defense Unpersuasive**.

All Altum's non-infringement arguments require this Court to improperly read absent limitations into the '084 Patent's independent claims. Specifically, Altum argues that the '084 Patent's Claim 1 requires materials with "high" insulating R-values such as 14 or greater. When in fact, the '084 Patent's

10

independent claims recite "an insulated overhead door" comprising "foam insulating material" and do not require the door to reach any particular R-value. Only dependent Claim 10 specifies that the door could have an R-value from about 14-50, but nothing in the '084 Patent or elsewhere in the intrinsic record requires the independent claims to have any specific R-value, let alone a specific high-insulating R-value.

With respect to the claim language describing the panel as being "flexible along its entire length," Altum inserts the limitation that the panel must be "innately flexible" so as to exclude a panel that combines more rigid sections and employs partial gaps to impart greater flexibility. This reading is not supported by Claim 1's language. In fact, viewing the referenced limitation in its entirety, Claim 1 goes on to recite the panel as "being flexible along the entire length of the panel so as to be capable of approximating the curvature of curved tracks[.]" (Appx0037, Col. 6 ln. 18-47.) The words of a claim are to be given their plain and ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). Applying the plain meaning, the claimed panel need only be flexible along its entire length so as to be capable of bending around the curved tracks. Contrary to Altum's non-existent claim limitations that the panel cannot include gaps or rigid sections, dependent Claims 4 and 11 state that the door of Claim 1 can include compression gaps to allow the foam to more easily bend

and that only "a portion" of the insulating material and thermoplastic membrane need to flex.

Compounding its flawed argument, Altum bases its improper effort to read limitations into the '084 Patent's claims on the erroneous theory that (a) Cold Chain disavowed a panel having multiple rigid articulating sections, and (b) that the District Court improperly imported language from dependent claims to broaden the independent claims. Regarding the former, Altum selectively relies on early prosecution history about a claim term that was rejected, *and* Altum fails to mention the referenced term was deleted in favor of other distinguishing features to secure allowance. Regarding the latter, the District Court did not err by acknowledging that because compression gaps and an optional third layers were recited in dependent Claims 4 and 9, respectively, those features are presumed to be within the scope of the claim from which they depend. Altum has not identified any term in independent Claim 1 that is improperly broadened by the recitation of the features of dependent Claims 4 and 9.

In its biggest stretch, Altum reads a method limitation into the independent claims, arguing that the claimed door must be made from a two-layer panel and cannot include a third layer. But importantly, independent Claim 1 is directed to an article of manufacture and contains no limitation on

12

the nature of the panels from which it is made. And, Altum's argument is again premised on the false theory that the District Court referenced dependent Claim 9's recitation of an optional third layer to improperly broaden independent Claim 1 to allow a panel with three layers. Compounding this error, Altum relies on various excerpts from the prosecution history to argue that Cold Chain somehow disavowed a door having more than two layers while ignoring the claim language entirely. Claim 1 recites a door *comprising* a thermoplastic membrane and a sheet of foam insulating material directly attached to the thermoplastic membrane. No other structural layers are recited in Claim 1 and the claim uses the open claim language "comprising," which allows for the inclusion of additional features. Further, independent Claim 9 expressly provides for an optional additional membrane.

For disclaimer to apply, a patentee must make a clear and unmistakable disavowal of the entire claim scope for disclaimer to apply. *CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1382 (Fed. Cir. 2022); *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014). Altum has cited nothing in the '084 Patent or intrinsic record to suggest that Cold Chain disavowed the plain meaning of the allowed claims. Accordingly, Altum cannot raise a substantial question as to the District Court's infringement finding.

**Ridge Proved Irreparable Harm, and Any Harm to Altum Is Irrelevant**.

It is well-established that loss of access to customers and delayed entry into the market are irreparable harms. *Southern Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 852-853 (6th Cir. 2017); *Abbott Labs. v. Sandoz*, Inc., 544 F.3d 1341, 1361-62 (Fed. Cir. 2008). Ridge proved that its plans to enter the market with its business partner have halted because of KNL's and Altum's infringement. Ridge also proved that KNL and Altum were actively working to expand their market share in the roll-up door market, and that KNL had poisoned the market with systematic false statements to prospects and customers that KNL had obtained a patent for a new and unique roll-up door. What KNL implied to the market by doing so, is that Ridge or anyone else's roll-up door was a knockoff of the patent that KNL did not even have.

Because Altum cannot combat these uncontroverted facts, it instead points to the harm that it suffers as an infringer. But, Altum ignores the well-established precedent that "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Summit Indus. Supply, LLC v. Triple Crown Consulting, LLC,* No. 1:20-cv-385, 2021 U.S. Dist. LEXIS 134399, *7 (S.D. Ohio July 19, 2021); *LEGO v. ZURU Inc.*, 799 Fed. Appx. 823, 832 (Fed. Cir. 2020). Altum brought this harm upon itself, and it cannot now

14

avoid responsibility simply because it faced fallout from its misconduct. This is especially true because Altum and Ridge are competitors in the same market, and Altum is made up of three former high-level Ridge employees, including former Board Member Dominic Grandominico. While on the Ridge board, Dominic created Altum for the purpose of directly competing against Ridge and usurping its corporate opportunities. Even if Altum's harm could be considered, Altum does not come to the Court with clean hands. Accordingly, Altum has not shown that the District Court abused its discretion in protecting Ridge's intellectual property rights and finding that Ridge suffered irreparable harm.

For these reasons and as explained below, the District Court's grant of the preliminary injunction should be affirmed.

# ARGUMENT

## Standard of Review

In response to Altum's Standard of Review, Ridge clarifies that the Federal Circuit reviews a district court's grant of a preliminary injunction under the law of the regional circuit. *Blephex, LLC v. Myco Indus.*, 24 F.4th 1391, 1399 (Fed. Cir. 2022). "The Sixth Circuit reviews a district court's decision to issue a preliminary injunction under the 'highly deferential' abuse of discretion standard." *Id.* (quoting *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 746 (6th Cir. 2020)). "The Sixth Circuit will reverse a district court's grant of a preliminary injunction 'only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.'" *Id.*

However, the Federal Circuit "'give[s] dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues.'" *Id.* at 1400 (quoting *Macom Tech. Solutions Holdings, Inc. v. Infineon Techs. AG*, 881 F.3d 1323, 1328 (Fed. Cir. 2018)). "Whether a patentee has shown a likelihood of success on the merits is one such area where we apply our own law, as it is a question specific to patent law." *Id.* (citing *Revision Mil., Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012)). "[W]hen the district court reviews only evidence intrinsic to the patent (the patent claims and specification[], along with

16

the patent's prosecution history), the judge's determination will amount solely to a determination of law, and the Court of Appeals will review that construction de novo." *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1321 (Fed. Cir. 2015).

## I.     Ridge Has Standing to Bring Its Infringement Claims.

Altum argues that the Ridge does not have all substantial rights in the '084 Patent because Cold Chain retains the right sue. (Doc. 30, p. 32.) However, this argument is incorrect, and the District Court did not err in finding that Cold Chain transferred all substantial rights to Ridge.

"[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated * * * would cause the party holding the exclusionary right to suffer legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010). "Prudential standing requires, among other things, that 'a litigant assert his or her own legal rights and not rely on the rights or interests of third parties.'" *United Access Techs., LLC v. Verizon Internet Servs.*, No. 05-866-LPS, 2021 U.S. Dist. LEXIS 60149, at *13 (D. Del. Mar. 26, 2021) (quoting *Hill ex rel. Hill v. Pa. Dep't of Corr.*, 521 F. App'x 39, 40 (3d Cir. 2013)) (citing *Warth v. Seldin*, 422 U.S. 490, 499, 45 L. Ed. 2d 343 (1975)).

If a patentee transfers all "substantial rights," the transfer is treated as an assignment, and the licensee is deemed the patentee under 35 U.S.C. § 281 for

purposes of standing to sue for infringement. *Sicom Sys. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) (citing *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991)).

The Federal Circuit uses a variety of factors to determine whether all substantial rights have been transferred to a licensee to establish standing. *Alfred E. Mann Found. for Sci. Rsch.*, 604 F.3d at 1360-61. The most common of these factors are: 1. Whether the license transferred the exclusive right to make, use, or sell, the patented invention; 2. The licensee's right to sublicense; 3. The right to receive recovery in infringement suits; 4. The licensor's ability to supervise and control the licensee's activities; and 5. The right to bring suit related to the patent. *Id.* at 1361. The two most important factors in determining whether an agreement transfers substantial rights to render a transferee the owner for standing is the exclusive right to make, use, sell, and the right to sue. *Diamond Spin Master, Ltd. v. E. Mishan & Sons, Inc.*, No. 19cv9035 (DLC), 2019 U.S. Dist. LEXIS 210991, at *23 (S.D.N.Y. Dec. 6, 2019). To determine whether an exclusive license is tantamount to an assignment, the Court must ascertain the intention of the parties and examine the substance of what was granted. *Alfred E. Mann*, 604 F.3d at 1383.

### A.    Cold Chain Transferred the Right to Sue.

According to Altum, Cold Chain retained the "most important right" to the analysis—the right to sue—and because of that, Ridge can never have all substantial rights in the '084 Patent. (Doc. 30, p. 32.) Altum is incorrect. When a license does not require the licensor to sue infringers and in fact negates such an obligation, there is no substantial right retained. *McNeilab, Inc.*, 1996 U.S. App. LEXIS 19073, at *12. In *McNeilab*, a license agreement provided that a licensor had no obligation to prosecute actions against third parties for infringement, while at the same time acknowledging the licensor's ability to do so, if it chose. *Id*. at *12-13. The Federal Circuit found the licensor transferred all substantial rights in the patent when the licensor could "neither practice the licensed invention nor authorize anyone else to do so." *Id.* at *12. The clause in *McNeilab* did not transfer the licensor's right to sue in its own name or negate that right. *Id.* at *11. The clause expressly recited the retained right and allowed the licensee to proceed in litigation on its own only when the licensor failed to do so. *Id.*[3] Any retained right to sue was therefore a retained incidental right and

---

[3] Altum will argue that because the right to sue in *McNeilab* was captioned as a "Negation of Warranties," *McNeilab* is not applicable. This is not true. Both the license in *McNeilab* and the License Agreement here do not obligate the licensor to sue infringers. *Id*. at *11. There, McNeilab (licensee) could not require the licensor to prosecute infringement—and Ridge cannot require Cold Chain. *Id*. The licensor in *McNeilab* could not require McNeilab to bring the infringement suit—and Cold Chain cannot require Ridge. *Id*. at *12.

not a substantial right that would prevent the licensee's exclusive standing to sue. *Id.* at \*13 (citing *Cf. Radionics, Inc. v. Elekta Instrument AB*, 1994 U.S. Dist. LEXIS 8778, 33 USPQ2d 1110, 1113 (D. Mass. 1994)).

A licensor retaining the right to sue infringers also does not preclude a finding that all substantial rights have been transferred when the retained right to sue is illusory. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000). In *Speedplay,* a licensor retained the option to initiate infringement proceedings.[4] The Federal Circuit found that retained right was illusory because the licensee could render that right "nugatory" (or trivial) by granting any alleged infringer a sublicense. *Id.* at 1251. "Even though [Licensors] retained the right to sue, that right would not hinder [Licensee]'s enjoyment of the patent rights in any meaningful way." *Id.* As a result, this Court found that the retained option to sue did not amount to "retention of a substantial right" to prevent standing. *Id.* at 1252.

Not only can a licensor's grant of the right to sublicense render the licensor's right to sue illusory, it can also negate the licensor's right to exclude,

---

[4] Altum will argue that *Speedplay* is not applicable because the license agreement stated that the licensors were permitted to sue only if the licensee failed for three months to stop the alleged infringement. But, this was not a determinative factor for the Court. The Court instead relied on the fact that the licensee could manage the litigation (like Ridge can) and that the licensee could grant the alleged infringer a sublicense (like Ridge can). *Id.* at 1251.

which eliminates the licensor's standing to sue. *Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-00358 WHA, 2020 U.S. Dist. LEXIS 228257, *19 (N.D. Cal. Dec. 4, 2020). The only parties with standing to sue for patent infringement are those with the right to exclude others from practicing a patent and "[a] plaintiff does not have the ability to prevent the defendant from practicing a patent if another party has the right to allow the defendant to use the patent." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1347 (Fed. Cir. 2016); *Uniloc USA, Inc. v. Motorola Mobility, LLC*, No. 17-1658-CFC, 2020 U.S. Dist. LEXIS 244512, at *15 (D. Del. Dec. 30, 2020).

Like *McNeilab*, Cold Chain has the right to pursue an action in its own name, but does not have the obligation to do so. (Appx0264-265). In fact, Ridge has a more substantial right to sue than in *McNeilab*, because the *McNeilab* licensee could only sue if the licensor chose not to. 1996 U.S. App. LEXIS 19073, at *11. While Ridge must give Cold Chain notice and the option to initiate a patent infringement action first, there is nothing preventing Ridge from also pursuing infringement actions, whether Cold Chain initiates or not. (Appx0264-265.) If Ridge initiates, or they both initiate together, Cold Chain must share in all costs together up to $2,000,000. (*Id.*). While Cold Chain retains a right to reimbursement from settlement for the expenses it incurs, Ridge

21

"retain[s] final control over any major strategic decisions and/or settlement of any such actions." (*Id.*).

If Cold Chain initiated a lawsuit on its own, Ridge could join in that lawsuit, thereby triggering Paragraph 14 of the License Agreement and requiring Ridge to control all major decisions and settlement. Ridge's right to sue and control a lawsuit is completely unfettered by Cold Chain's action or inaction. Like the licensor in *McNeilab*, Cold Chain's ability to also bring a lawsuit is incidental, not substantial.

If Ridge did not join in a lawsuit, it could control the lawsuit nonetheless through its ability to sublicense its rights without Cold Chain's approval. Ridge's free ability to sublicense means Cold Chain lacks the exclusionary right necessary for standing and could not maintain a lawsuit on its own. Cold Chain cannot exclude others when Ridge alone has the sweeping ability to include. Cold Chain cannot grant KNL or Altum the ability to use the invention covered by the '084 Patent. Ridge can, without Cold Chain's approval or input.

### B. Cold Chain Transferred the Exclusive Right to Make, Use, or Sell the '084 Patent's Invention.

Altum also ignores the other factors in the analysis, each of which weigh in Ridge's favor.

> In evaluating whether a particular license agreement transfers all substantial rights in a patent to the licensee, we pay particular attention to whether the agreement conveys *in full* the right to

22

exclude others from making, using and selling the patented invention in the exclusive territory.

*Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1379 (Fed. Cir. 2000).

Altum ignores what is probably the most important factor in the standing/substantial rights analysis. The License Agreement unquestionably makes Ridge the exclusive licensee "to make, have made, use, sell, install, service, import/export and/or otherwise commercialize Licensed Products in the Territory." (Appx0261). "Licensed Products" incorporates all applications "that include[] every limitation of at least one valid and enforceable claim of the Licensed Patents." (*Id.*) "Territory" means "all countries of the world." (*Id.*).

Ridge is the only person with the ability to make and sell products covered by the '084 Patent. It is also the only party that can grant any other party the right to use the '084 Patent. This principal substantial right is not retained by Cold Chain. Cold Chain conferred standing alone to Ridge for patent infringement pursuit.

### C.   Cold Chain Transferred the Substantial Right to Sublicense the '084 Patent.

"A licensee's right to sub-license is an important consideration in evaluating whether a license agreement transfers all substantial rights." *Prima Tek II*, 222 F.3d at 1380. The Federal Circuit has also held the retention of a sublicensing veto for all sublicenses by a patentee was "'a minor derogation from

23

the grant of rights' and thus did not deprive the licensee of standing to sue in its own name.'" *Id.* (quoting *Vaupel*, 944 F.2d at 875). The right to sublicense is critical to our analysis because a licensee's right to grant a sublicense can "render[] even the *patent owner's* right to exclude (and, thus, to sue) illusory." *Uniloc USA, Inc. v. Apple, Inc.*, 2020 U.S. Dist. LEXIS 228257, at *19 (citing *Alfred E. Mann*, 604 F.3d at 1362) (emphasis in original).

The License Agreement gives Ridge the right to sublicense to "Door Manufacturers" if they purchase and use Panels from Ridge to make roll-up doors covered by the Patent. (Appx0261-262). Logically, this provision encompasses all potential sublicensees. Any sublicense must also not last longer than the License Agreement and cannot be sublicensable further by the Door Manufacturer. (*Id.*). Beyond these common and practical provisions, there are no restrictions on Ridge's ability to sublicense the License Agreement.

Ridge could sublicense to KNL, which would invalidate all claims (including hypothetical claims leveled by Cold Chain) against KNL and Altum. This substantial right renders Cold Chain's interests in pursuing patent infringement claims illusory. For all practical purposes, Ridge's right to sublicense is unrestricted and without any necessary approvals or authority from Cold Chain. Cold Chain retains no further rights related to sublicensing.

24

Ridge's bundle of rights under the License Agreement is substantial, and Cold Chain does not retain any right that would require its presence in the underlying lawsuit for purposes of standing. Ridge is free to exercise its activities related to the '084 Patent without Cold Chain's supervision or control. The District Court did not err in rejecting Altum's standing arguments. As a result, this assignment of error should be overruled.

## II.    Ridge Proved a Substantial Likelihood of Literal Infringement.

As established by applying the plain meaning of the claim language to the Accused Door, the District Court properly found infringement based on the presence of each element of the asserted claims in the Accused Door. (Appx0015.) Review of the Claim Chart Exhibit to Ridge's Complaint makes this fact readily apparent and confirms that the District Court did not abuse its discretion in granting the injunction, nor did it commit legal error in construing the '084 Patent's plain language. (Appx0219-245.) Much to Altum's dismay, the District Court did not err by refusing to insert the non-existent limitations that Altum bases its defenses on. More specifically, the District Court did not err by refusing to insert a limitation requiring a specific high R-value level into the '084

Patent's independent claims when the independent claims do not recite any specific R-value that should be achieved.

Likewise, the District Court did not err in refusing to read an "innate flexibility" limitation into the independent claims. To the contrary, Altum's arguments are based on a factually and legally erroneous disavowal argument concerning claims that are not part of the '084 Patent as granted and a flawed allegation that the District Court improperly relied on a dependent claim to broaden independent claims.

Finally, the District Court did not err by refusing to limit the independent claims to panels made from only two layers when the claim expressly provides for additional layers with the open claim language "comprising" and three layers are expressly contemplated by dependent Claim 9. To the contrary, Altum's arguments are again premised on erroneous allegations of disavowal and Altum's own improper reliance on a dependent claim to try expanding the requirements of independent Claim 1. Altum continually attempts to read

limitations into the '084 Patent that are not present.[5] Further, Altum ignores this Court's precedent requiring a clear, unmistakable disavowal of the full scope of claims that are not cancelled. Altum also incorrectly argues that the District Court erred in admitting Sharpe's testimony and that Altum asserted an invalidity defense (when it did not). For these reasons and as explained below, Altum cannot show that the District Court erred in finding the Accused Door infringes the '084 Patent.

### A.    The Accused Door Contains Foam Insulating Material as Claimed By the '084 Patent's Plain Language.

"[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970 (Fed. Cir. 1995). Generally, a claim's words are to be given their plain and ordinary meaning, which is the meaning the words would have to someone of ordinary skill in the art. *Phillips*, 415 F.3d at 1312-13. Moreover, it is well-established that

---

[5] Altum's defense theories continue to shift as this litigation progresses. First, Altum argued that that the Accused Door is not a single panel roll-up door. (Appx1286-87, Tr. 27:20-28:3.) Then, Altum argued that the Accused Door actually is a single panel roll-up door, but it is not infringing. (Appx0297, Tr. 13:12-14; Appx0307, Tr. 23:19.) Now, Altum asserts a claim construction based on misapplication of the doctrine of claim differentiation, a validity defense that it did not argue before the District Court, and a prosecution disclaimer defense to its literal infringement that ignores what actually transpired during prosecution.

in interpreting a claim, courts should first look at the intrinsic evidence—the patent, the specification, and the prosecution history. *Vitronics Corp v. Conceptronic,* 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Markman*, 52 F.3d at 979). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." *Id.*

Altum argues Claim 1 of the '084 Patent requires a door having "high insulating properties" with an R-value near 14. (Doc. 30, p. 35-37.) In doing so, Altum improperly reads non-existent limitations into the '084 Patent's claims. To the contrary, Claim 1 does not require a specific level of insulation. Claim 1's plain language requires a "sheet of foam insulating material." (Appx0037, Col. 6 ln. 32.) The specification provides examples of suitable foams, including polyethylene foams, polyester foams, open cell foams, PVA foams, closed cell foams, and many others.[6] (Appx0036, Col. 4 ln. 9-21.) The specification does not state that the foams must provide any specific level of insulation.

To justify reading a high R-value limitation into the claims, Altum spends a great deal of time pointing to preferred embodiments in the specification to argue that a high R-value is required in every claim. (Doc. 30, p. 35-37.) However, it is well-established that claims are not limited to their preferred

---

[6] Notably, some of the materials listed in the specification as suitable types of foam have an inherently low R-value. (*See* Appx0036, Col. 4 ln. 9-21.)

embodiments. *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 967 (Fed. Cir. 2022) ("Embodiments in the specification—even if there is only one embodiment—cannot limit the scope of the claims absent the patentee's 'words or expressions of manifest exclusion or restriction.'") (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1372 (Fed. Cir. 2012)); *Kruse Tech. P'ship v. Volkswagen AG*, 544 Fed. Appx. 943, 951 (Fed. Cir. 2013) ("'The mere fact that there is an alternative embodiment disclosed in the asserted patent that is not encompassed by our claim construction does not outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence.'") (quoting *August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1285 (Fed. Cir. 2011)). The '084 Patent specifically states that the claimed single panel doors may have one or more listed advantages over the prior art, *including* that the claimed door *may* have a higher R-value:

> one of more of the following advantages may be realized by the doors of the present disclosure: a door with a higher R-value for openings designed to utilize an overhead door that runs on tracks; elimination of horizontal seams in the door that result in air leaks and heat intrusion and cause a reduction of the overall thermal performance of the door; providing an improved, seam free door surface for affixing decals, logos or advertising information; providing a simpler door with fewer parts used for its manufacture than many existing doors and a reduction of maintenance costs; reducing the weight of the door to allow a trailer to carry increased

amounts of freight; and providing a door that easily utilizes existing overhead track technologies.

(Appx0035, Col. 1 ln. 66 – Col. 2 ln. 11.)

The Federal Circuit has been "clear that a claim need not cover every disclosed embodiment." *Kruse Tech. P'ship,* 544 Fed. Appx at 951. Altum's reliance on *Rembrandt Patent Innovations* for the proposition that the description of an invention limits the scope of the invention is misplaced. (Doc. 30, p. 36-37, citing *Rembrandt Patent Innovations, LLC v. Apple, Inc.*, 716 Fed. Appx. 965 (Fed. Cir. 2017).) In *Rembrandt Patent Innovations, LLC*, the patent at issue described "only a single embodiment" of the invention. 716 Fed. Appx. at 971. Thus, *Rembrandt* does not apply to limit the '084 Patent's inclusive description of permissible embodiments.

Finally, Altum's effort to read a specific high-insulating R-value into the '084 Patent's independent claims would improperly read limitations from the dependent claims into the independent claims. *Phillips*, 415 F.3d at 1314. "[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id*. at 1315. "Thus, reading an additional limitation from a dependent claim into an independent claim would not only make that additional limitation superfluous, it might render the dependent claim invalid." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006).

When the patentee, Cold Chain, wanted to claim a particular level of insulation, it did so in dependent Claim 10, which reads "the insulated overhead door of claim 1, the door having an R-value ranging from about 14 to 50." (Appx0038, Col. 7 ln. 6-7.) Because an R-value is specifically called out in dependent Claim 10, Claim 1 is legally presumed <u>not to be limited in that manner</u>. Dependent Claim 17 is similarly instructive because it recites acceptable ways to increase the claimed door's R-value independent of the foam insulating material. (Appx0038, Col. 8 ln. 25-53.) Thus, nothing in the intrinsic record justifies Altum's improper attempt to limit the independent claims to foam insulating material that has an R-value of 14 or higher. Altum's attempt to read that limitation into Claim 1 violates core principles of claim construction. Because the '084 Patent's independent claims do not require high R-values of 14 to 50, Altum's arguments that Ridge did not prove the Accused Door meets those high R-value ranges is not a valid basis for Defendants to avoid responsibility for infringing the '084 Patent's independent claims. (Doc. 30, p. 37-38.) Nonetheless, Ridge presented testimony to establish that the foam in the Accused Door is, in fact, insulating. For example, Ridge CEO Gary Grandominico testified that the foam (as used in the Accused Door) is insulating. (Appx0681-682, Tr. 397:20-398:24; Appx0701-702, Tr. 417:17-418:9.)

31

In tandem with Gary Grandominico's testimony, the record establishes that the foam in the Accused Door is consistent with options that are expressly provided for in the '084 Patent. Specifically, the Accused Door is made from PET foam. (Appx0822, Tr. 538:14-18.) PET foam is a foam type that is contemplated under the '084 Patent's plain language. (Appx0036, Col. 4 ln. 15-20.) PET or polyethylene terephthalate is a polyester foam comprising polyethylene units. The '084 Patent calls out a wide variety of polyethylene, polypropylene, polyether and polyester based foams suitable for use in the claimed invention. (*Id.*) Although Altum never raised the issue in the District Court, it has taken the position before this Court that the foam in the Accused Door is a polyester (Doc. 33)—and thus, one of the suitable classes of foam options that is listed in the '084 Patent.

Altum mistakes the fact that there was no evidence of the Accused Door's R-value as a lack of evidence that the Accused Door is insulating. But, as explained above, a specific R-value is not required for Claim 1 to read on to the Accused Door and the record establishes that the foam material in the Accused Door is insulating. By contrast, there was no credible evidence presented to establish that the Accused Door is not insulating within the meaning of Claim 1. Altum attempts to rely on Jeff Phlipot's (KNL's CEO) blind, self-serving testimony that the foam has a low R-value. (Appx0769, Tr. 485:10-12.) But Jeff

32

Phlipot testified on cross-examination that he does not actually know the foam's insulating properties or R-value and had not tested them. (Appx0774, Tr. 490:7-15.) Altum's expert witness Jason Foster ultimately admitted that none of the asserted claims in the '084 Patent contain any requirement that the insulating foam have any particular R-value. (Appx0859, Tr. 575:2-10.) Likewise, although Dominic Grandominico speculated about the Accused Door's R-value, he acknowledged that there is no specific R-value requirement present in any of the independent claims. (Appx0859, Tr. 575:7-14.) Accordingly, the record sufficiently supports that the Accused Door utilizes an insulating foam, as claimed by the '084 Patent.

On balance, Ridge presented evidence that the Accused Door uses a type of foam insulating material as claimed in the '084 Patent. Altum attempted to read in a limitation that the '084 Patent's claims require a specific high R-value, but its witnesses conceded that this requirement is not present in Claim 1. Accordingly, the District Court did not abuse its discretion when it found that the Accused Door contains insulating foam material, as asserted in Claim 1.

### B.    Altum's Reliance on Theories of Disavowal and Improper Broadening to Read Limitations into the Claims Have No Merit.

Altum attempts to read multiple non-existent limitations into Claim 1 that are contrary to Claim's plain meaning. Specifically, Altum argues for reading

the following new limitations into Claim 1 that are not supported or present in the Patent, including that it:

> (1) requires a door meeting the vague requirement of being "innately flexible," so as to exclude "compression gaps" and rigid sections; and

> (2) requires a door made from something other than a "sandwich panel," so as to exclude a door having more than two layers (ignoring that the Accused Door is not a closed sandwich panel).

In attempts to justify contriving the above limitations, Altum incorrectly argues that the patentee disavowed doors that include segments with any rigidity, compression gaps, or doors with more than two layers. This is provably false. In raising these arguments, Altum relies on selective excerpts from the '084 Patent's prosecution concerning claim features that the USPTO rejected and the patentee deleted in favor of other distinguishing features prior to issuance. In discussing the prosecution history, Altum and its expert conspicuously ignore the final amendments that definitively establish the District Court did not err in rejecting Altum's arguments. Altum's argument on each non-existent limitation above is incorrect, unpersuasive, and nothing more than a desperate attempt to avoid liability for intentional efforts to unfairly compete by infringing Ridge's patent rights.

Prosecution disclaimer or disavowal "'precludes patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution.'" *CUPP Computing AS*, 53 F.4th at 1382 (quoting *Mass. Inst. of Tech.*

*v. Shire Pharms., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016)). "[A] patentee will only be bound to a 'disavowal [that was] both clear and unmistakable.'" *Id.* Moreover, a patentee must disavow the full scope of the claim term for disclaimer to apply. *Golden Bridge Tech., Inc.*, 758 F.3d at 1365; *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1367 (Fed. Cir. 2018) ("The doctrine of prosecution disclaimer precludes patentees from recapturing the full scope of  a claim term only when the patentee clearly and unmistakably disavows a certain meaning in order to obtain the patent.") (citing *Mass. Inst. of Tech.*, 839 F.3d at 1119). Statements made during prosecution regarding cancelled claims are not relevant to the disclaimer analysis. In *Mass. Inst. of Tech.*, the patentee attempted to narrow some claims during prosecution, but the examiner rejected the limitation under 35 U.S.C. §112. 839 F.3d at 1120-21. The patentee abandoned this limitation. *Id.* at 1121. Therefore, "[h]ad the examiner actually agreed with [the patentee's] arguments and allowed the proposed amendments, the claims could well have a different claim scope. But the examiner did not, and [the patentee] took a different approach." *Id.* Thus, "where an applicant abandons its unsuccessful argument, [this Court] conclude[s] that the prosecution history lacks the clarity necessary to establish prosecution disclaimer." *Malvern Panalytical Inc.*, 2023 U.S. App. LEXIS 28937, at *21 (explaining that the Federal Circuit has "declined to find prosecution

disclaimer where an applicant made an allegedly disclaiming argument to overcome prior art, the examiner disagreed, and the applicant 'never repeated the allegedly disclaiming statements and instead offered alternative reasons to overcome' the prior art.") (quoting *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1343 (Fed. Cir. 2009)). This is precisely what occurred during prosecution of the '084 Patent.

Here, as in *Mass. Inst. of Tech.,* the intrinsic record establishes that after Cold Chain attempted to distinguish Rauenbusch based on Rauenbusch having rigid, articulating panels, the examiner repeatedly rejected that distinction as unsupported under 35 U.S.C. §112. Cold Chain abandoned those efforts and instead distinguished the claims because the single panel door included a second outermost surface formed from the foam insulating material so as to be flexible along its length and capable of approximating the curvature of door frame tracks. (*See* Appx0985.)

More specifically, on August 15, 2015, Cold Chain filed its original underlying application titled "insulated overhead door." (Appx1152-1174). The USPTO initially declined the application pursuant to 35 U.S.C. §103(a) as being unpatentable over Rauenbusch, whose invention was also an insulated single-panel overhead door. (Appx1124). In the ongoing discussions with the examiner, Cold Chain attempted to distinguish its invention from Rauenbusch

by emphasizing that Rauenbusch's invention contained a plurality of rigid panels hinged together and not a single panel flexible enough to traverse a curved track. (Appx1050-1051; Appx1080-1088; Appx1095; Appx1106-1111; Appx1120).

The USPTO expressly rejected all Cold Chain's attempts by to distinguish Rauenbusch based on a lack of rigid hinged sections under 35 U.S.C. §112 and 35 U.S.C. §103(a). (Appx1066-1070; Appx1099).

> This is not convincing for Rauenbusch specifically states that the insulated overhead door is a single-piece plateshaped body structure (col. 2, lines 1-2) that can be coiled to a roll or deflected along a curved track (col. 2, lines 10-15; col. 4, lines 13-16, 32-37). (Appx1109).

> The claims have been amended to recite the new limitation of "the overhead door does not have multiple rigid, hinged sections", "the panel not having multiple rigid, hinged sections", "the panel not having multiple rigid sections". There is no support for the negative limitation/exclusionary proviso of the sections as not being rigid. (Appx1010).

Based on the examiner's refusal to include a limitation excluding doors with multiple rigid hinged sections, Cold Chain deleted that language from its pending claims (Appx0986; Appx0988-990; Appx1044; Appx1047) and instead distinguished the door in Rauenbusch because it did not include the claimed second outermost surface formed of foam insulating material so as to be flexible along its entire length, i.e., Rauenbusch does not include any exposed insulating

37

material, and Rauenbusch includes no insulating material in its hinge sites. (*See generally* Appx0276.)

In sum, all of Altum's disavowal arguments (1. That the door must be innately flexible; 2. That the District Court improperly construed Claim 4; and 3. That the patentee disclaimed a sandwich panel) are based on a claim limitation that the examiner rejected as being unsupported and which were expressly deleted from the claims in favor of other distinguishing features. For the reasons explained below, each argument fails.

### 1. The '084 Patent Does Not Require a Panel Made from Material Meeting the Vague New Limitation of being "Innately Flexible."

Altum argues the District Court misconstrued "the panel being flexible along the entire length of the panel" in a variety of ways. Altum's paraphrasing of the '084 Patent's language is misleading, and its arguments are both legally and factually flawed.

Altum argues that "flexible along its entire length so as to be capable of approximating the curvature of curved tracks" requires that the door be "innately flexible" (i.e., continuously very flexible at all points along its length). There is no support in the '084 Patent for this new—and tremendously vague—limitation. Altum asserts that because the patentee at one point attempted to distinguish doors that were comprised of multiple rigid hinged panels, a limitation that the panel is innately flexible must be read into the independent

claims of the '084 Patent. This argument is not supported by controlling law or the prosecution history.

The plain language of the claims belies Altum's arguments. The '084 Patent claims: "the overhead door comprises only one of the panel, the panel being flexible along the entire length of the panel so as to be capable of approximating the curvature of curved tracks. . .." (Appx0037, Col. 6 ln. 44-47.) When citing this verbiage, Altum conveniently leaves out the latter portion of the claim, which defines "flexible along the entire length of the panel" to mean being capable of approximating curved tracks. Thus, the District Court correctly relied on the '084 Patent's plain language in interpreting the claims on this point regarding flexibility. Because nothing in the plain meaning of this language requires "innate flexibility," or excludes compression gaps or rigid segments as long as it is capable of approximating the curvature of the tracks, it is Altum that attempts to import new limitations in desperate efforts to overturn the District Court.

In advancing its spurious disavowal arguments related to the rejected and deleted claim language distinguishing "multiple rigid, hinged sections" (Doc. 30, p. 43, 45-48), Altum brazenly overstates that the District Court "held the specification and prosecution history were irrelevant to its analysis." (Doc. 30, p. 43, citing Appx0886-887.) That is not what the District Court said. The

39

District Court sustained an objection as to the relevance of Altum's counsel's question "[w]hat about the applicant initiated interview summary sticks out to you?" (Appx0884, Tr. 600:6-7.) Because the language excluding multiple rigid panels was removed from the '084 Patent, the District Court sustained the objection. (Appx0885, Tr. 601:14-20.) The District Court's decision is consistent with the Federal Circuit's precedent that when an applicant abandons its unsuccessful argument, the prosecution history lacks the clarity necessary to establish prosecution disclaimer." *Malvern Panalytical Inc.*, 2023 U.S. App. LEXIS 28937, at *21. The District Court did not make the sweeping characterization that the specification and prosecution history were irrelevant, as Altum portrays.

More significantly, Altum's dogged reliance on early arguments during the prosecution conspicuously ignores the final amendments that lead to the allowance of the claims. Cold Chain attempted to claim: "the single panel not having multiple rigid, articulating sections." (Appx1081.) The examiner rejected this claim as unsupported under 35 U.S.C. §112. (Appx1066.) Recognizing that the examiner was not going to withdraw his rejections, Cold Chain abandoned the "single panel not having multiple rigid, articulating sections" limitation and instead claimed a door having a second outermost surface formed by the foam insulating material and "being flexible along the entire length of the panel so as

to be capable of approximating the curvature of curved tracks." (Appx1044.)

This claim language was ultimately allowed by the examiner. (Appx0975.)

> The presumption of validity under 35 USC § 282 carries with it a presumption the examiner did his duty and knew what claims he was allowing. In any event, the claims as allowed are what we [the Court] have to deal with and it is not for the courts to say that they contain limitations which are not in them.

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989).

Because Cold Chain abandoned the unsuccessful "single panel not having multiple rigid, articulating sections" limitation, there was no disclaimer. *CUPP Computing AS*, 53 F.4th at 1382; *Golden Bridge Tech., Inc.*, 758 F.3d at 1365; *Malvern Panalytical Inc.*, 2023 U.S. App. LEXIS 28937, at *21.

Furthermore, Claim 11 recites a method of "moving the insulated overhead door so that **a portion of** the thermoplastic membrane and **a portion of** the insulating material flex to allow the door to traverse the curved portion of the tracks." (Appx0038, Col. 7 ln. 8-14, emphasis added.) By its express terms, Claim 11 establishes that only a portion of the thermoplastic membrane and insulating material are required to flex to allow the door to traverse curved tracks. Altum's "innately flexible" argument is therefore entirely flawed—in addition to being a vague and unworkable limitation in the first place. Still further, in contrast to Claim 1—which requires only a "foam insulating material" and "the panel being flexible along the entire length of the panel so as

41

to be capable of approximating the curvature of curved tracks,"—independent Claim 16 (which is not asserted) recites "a sheet of *flexible foam* insulating material." (*Compare* Appx0037, Col. 6 ln. 45-47 *with* Appx0038, Col. 8 ln. 6, emphasis added.) Claim 16 establishes that when the patentee intended the foam to be "innately flexible," it said so. Thus, the District Court did not err in refusing to read an innate flexibility limitation into Claim 1.

### 2. The District Court Properly Construed Independent Claim 1 to Include the Compression Gaps of Dependent Claim 4.

Altum further argues that the District Court erred by importing language from dependent Claim 4 to improperly broaden independent Claim 1. (Doc. 30, p. 44.) But, in fact, the '084 Patent directly contradicts Altum's argument on this point because dependent Claim 4 provides for "compression gaps" to be routed into the claimed door's panel to allow the panel and foam core to more easily bend. (Doc. 30, p. 42-44.) "[B]y definition, an independent claim is broader than a claim that depends from it[.]'" *Tubular Rollers, LLC v. Maximus Oilfield Prods., LLC*, No. 2021-2319, 2023 U.S. App. LEXIS 16295, *29 (Fed. Cir. 2023) (quoting *Littelfuse, Inc. v. Mersen USA EP Corp.*, No. 2021-2013, 2022 U.S. App. LEXIS 8901, *8 (Fed. Cir. April 4, 2022)). Altum misapplies *Enzo Biochem, Inc. v. Applera Corp.* to make its strained argument that since independent Claim 1 does not expressly refer to compression gaps, construing it to read on the

compression gaps recited in Claim 4 improperly broadens Claim 1.[7] To the contrary, the foam insulating material of Claim 1 does not require compression gaps, and dependent Claim 4 properly further limits independent Claim 1 by adding compression gaps. Moreover, Claim 1 uses the broad "comprising" language that means "including but not limited to." *Cias, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007). By its plain language, Claim 1 reads on the compression gaps of dependent Claim 4, and the District Court did not improperly broaden Claim 1 by its reference to Claim 4 or any other claim.

Even if Altum's arguments regarding disavowal had merit—which they do not—the Accused Door does not even contain multiple rigid, hinged sections. Instead, it contains the compression gaps contemplated by Claim 4 that are routed into a type of foam material that is contemplated by the '084 Patent. (Appx0036, Col. 4 ln. 9-21 describing suitable foams; *see* Appx0009 for a photograph of the Accused Door's compression gaps.) Accordingly, Atum's compression- gap argument fails.

---

[7] In *Enzo Biochem, Inc.*, the Court stated that it would be improper to import a limitation from a dependent claim into an independent claim. 780 F.3d 1149, 1157 (Fed. Cir. 2015). However, the independent claim at issue did not use the broad "comprising" language.

### 3. *The District Court Did Not Improperly Construe the Claims as Including Three Layers.*

Altum also argues a new theory that Cold Chain disavowed a three-layer sandwich panel during prosecution. (Doc. 30, p. 52.) There is no expert testimony (or any testimony) in the record to support this theory. Nonetheless, this argument is factually and legally incorrect.

Although independent Claim 1 is directed to an article of manufacture, Altum argues the patentee disavowed doors made from a "sandwich panel" so as to read a non-existent limitation that the panel of Claim 1 cannot have three layers. In failing to adopt its strained and improper construction, Altum argues that the District Court made three crucial errors in that it (1) misapplied the open claim language "comprising" to improperly interpret the claims to include more than two layers; (2) improperly imported a limitation from a dependent claim to broaden an independent claim; and (3) the recitation of a third layer in dependent Claim 9 does not support the District Court's interpretation of Claim 1 to read on such a three layer construct.

First, Altum's attempted novel interpretation of "comprising" is ludicrous. (Doc. 30, p. 49.) It is well-established that comprising "indicates an open-ended construction." *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1383 (Fed. Cir. 2000) (explaining "[a] drafter uses the term 'comprising' to mean 'I claim at least what follows and potentially more.'");

*Solvay S.A. v. Honeywell Int'l Inc.*, 742 F.3d 998, 1005 (Fed. Cir. 2014) ("The well-established meaning of 'comprising in a method claim indicates that the claim is open-ended and allows for additional steps.'") (quoting *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed Cir. 2003)).

Altum's reliance on *Lochner Techs., LLC v. Vizio, Inc.* to support its argument is flawed. (Doc. 30, p. 49-50.) In *Lochner Techs., LLC*, the district court and the Federal Circuit were interpreting the term "including," not "comprising," in the context of the written description requirement under §112 (not infringement). 567 Fed. Appx. 931, 938-39 (Fed. Cir. 2014). Moreover, the District Court plainly considered the specification because the optional flexible membrane is named in the specification. (Appx0037, Col. 5 ln. 41-44.)

Second, Altum again erroneously argues that the District Court erred by relying on dependent Claim 9 to improperly broaden the requirements of independent Claim 1. (Doc. 30, p. 50, again citing *Enzo Biochem, Inc.*) This is quite simply not accurate. As noted, an independent claim is broader than a claim that depends on it. *Tubular Rollers, LLC,* 2023 U.S. App. LEXIS 16295, at *29 (quoting *Littelfuse, Inc.*, 2022 U.S. App. LEXIS 8901, at *8). Claim 9 claims "[t]he insulated overhead door of claim 1, further comprising an additional membrane that is not the thermoplastic membrane." (Appx0038, Col. 7 ln. 3-5.)

Claim 9 therefore properly further narrows Claim 1 and Claim 1 is presumed to also read on the option to include the additional membrane of Claim 9.

Notably, in its initial draft of the '084 Patent, Cold Chain included as dependent Claim 13, the following: "The insulated overhead door of claim 1, further comprising an additional membrane* * *" (Appx1166). At no time did Cold Chain abandon or take a position contrary to the dependent claim allowing for an "optional" thermoplastic membrane in addition to the thermoplastic first-outermost surface and insulating-foam second-outermost surface. And every version of the '084 Patent, including the final issued '084 Patent, provided for that optional layer. (Appx0038; Appx0987; Appx1046; Appx1082; Appx1108; Appx1166). Cold Chain's final amendment dated December 10, 2014 (Appx0985-998), included specifications related to the positioning and composition of the two major layers of the door, which was ultimately allowed. (Appx0987; Appx0974). Therefore, Cold Chain did not distinguish the '084 Patent from Rauenbusch based on any disavowal of a three-layer sandwich panel. The '084 Patent was allowed because it added the feature of a second outermost surface formed from the foam insulating material. (Appx0994, stating "the Rauenbusch sandwich structures do not include a foam insulating material forming the second outermost surface of the door, as recited in claims 1, 16 and 24 and the claims dependent thereon."; Appx0997, stating "Rauenbusch also

does not teach or suggest a foam insulating material forming the second outermost surface of the door, as claimed.") Moreover, the examiner is presumed to know what (s)he allowed, and (s)he permitted by a door with a first outermost surface, second outermost surface, and an optional flexible membrane. *Intervet Am., Inc.,* 887 F.2d at 1054.

Third, Altum argues that the optional flexible membrane must be made of cloth, plastic, rubber sheeting, or "regular plastic." (Doc. 30, p. 51.) This is unsupported by the '084 Patent. The specification permits an optional flexible membrane "made of any suitable flexible material" and provides examples of some, but not all, suitable materials. (Appx0037, Col. 5 ln. 43.) Claim 9 clarifies that the optional flexible membrane cannot be the "thermoplastic membrane forming the first outermost surface of the door" as it is defined in Claim 1. (*Compare* Appx0038, Col. 7 ln. 3-5 *with* Appx0037, Col. 6 ln. 30-31.) This simply confirms that the optional layer is a separate surface from the first outermost surface, rather than creating a new limitation regarding the material of the optional layer. Nothing in the '084 Patent suggests that the optional flexible membrane cannot be made of thermoplastic material. Altum's interpretation again attempts to reads a new, vague limitation—"regular plastic"—into the '084 Patent claims. This argument is unpersuasive.

Nothing in the '084 Patent disallows the claimed door to be made from a three-layer sandwich panel containing compression gaps that expose the door's foam core. As summarized in the Claim Chart Exhibit, Claim 1's plain language recites a door that *comprises*:

- "a thermoplastic membrane comprising glass fibers,"

- "forming the first outermost surface of the door,"

- "a sheet of foam insulating material directly attached to the thermoplastic membrane," and

- "forming the second outermost surface of the door."

(Appx0037, Col. 6 ln. 27-41.) In fact, the embodiment disclosed at column 4, lines 44-46 is exactly the Accused Door. (Appx0035, stating "[i]n yet another embodiment, compression gaps **8** could be formed in the foam sheet illustrated in FIG. **1**.") Altum cannot point to any language of the '084 Patent that says otherwise.

Altum argues that "in the KNL Door, both outermost surfaces are made from thermoplastic material." (Doc. 30, p. 53.) Altum's argument ignores the plain language of the claims, as relied upon by the District Court—that the second outermost surface of the claimed door is the surface formed by the foam insulating material. And, as discussed above, the '084 Patent contemplates an optional third layer, and nothing in the Patent precludes the third layer from

being thermoplastic. Altum's attempt to read in the limitation of "regular plastic" is improper. Therefore, the claimed second outermost surface reads on to the Accused Door.

### C.    Altum's Interposed Arguments that the District Court Erred By Allowing Sharpe to Testify Are Without Merit.

As an aside, Altum attacks Sharpe's expert testimony as improper. (Doc. 30, p. 47.)[8] Sharpe only ever advanced the plain and ordinary meaning of the '084 Patent. *Sundance, Inc. v. Demonte Fabricating Ltd.* holds only that it is an abuse of discretion for someone not skilled in the art to testify on the issues of "noninfringement or invalidity." 550 F.3d 1356, 1362 (Fed.Cir.2008). However, patent lawyers may testify to other issues related to patents even if they are not of ordinary skill in the art involved. *Marical, Inc. v. Cooke Aquaculture Inc.*, No. 1:14-cv-00366-JDL, 2017 U.S. Dist. LEXIS 140466, at *11 (D. ME. Aug. 31, 2017) (patent lawyers may serve as experts for purposes of describing PTO practices and procedures).

That is precisely what Sharpe did. Sharpe's limited testimony related to his creation of the claim chart exhibit (R. 1 at 170-196) and offering testimony about general principles of patent law and prosecution. Sharpe answered certain

---

[8] Moreover, if Sharpe's testimony was improper for his alleged lack of skill in the art, then Han's testimony, who also has no skill in the art, was equally improper. (Appx0605, Tr. 321:24-322:6.)

questions from the District Court regarding how patent lawyers and examiners interpret certain terms. (Appx0383, Tr. 99:9-22.) It was within the District Court's discretion to find guidance from Sharpe's testimony or ignore it. *Markman, Inc.*, 52 F.3d at 983. And despite Altum's characterization that Ridge "presented no admissible evidence supporting its claim construction" (Doc. 30, p. 47-48), Ridge continually relied on the '084 Patent's plain language, which is the most authoritative source of its meaning. *Phillips*, 415 F.3d at 1312 ("It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'") Thus, there is no merit to Altum's attempt to employ belated arguments about Sharpe's credentials and testimony to avoid the District Court's sound finding that the Accused Door infringes the '084 Patent.[9]

### D.    Altum's Validity Argument Is Not Properly Before the Court, and it is Incorrect.

In a last-ditch argument, Altum asserts that the '084 Patent is invalid. (Doc. 30, p. 53-54.) However, Altum did not raise any arguments as to validity

---

[9] In response to Altum's footnote 9 (Doc. 30, p. 48) claiming Sharpe did not consider the prosecution history or specification, the record blatantly contradicts this assertion. (Appx0422, Tr. 138:3-7, Sharpe stating: "I reviewed the prosecution history of the ['084 Patent].")

before the District Court. (Appx0014).[10] Thus, any validity arguments are waived on appeal. *Stauffer v. Brooks Bros. Group*, 758 F.3d 1314, 1322 (Fed. Cir. 2014) (citing *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) ("If a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived on appeal, and we do so here.")).

Even if Altum's arguments were properly before the Court (they are not), Altum is incorrect that the '084 Patent does not encompass a door made from a sandwich panel with compression gaps. As explained above, the door that Altum describes on page 54 is claimed under Claims 1, 4, and 9, at a minimum. (Appx0037-38.) Also as explained above, the '084 Patent was permitted over Rauenbusch (and other prior art) because of its second outermost surface of foam.[11] And, as this Court has recognized, the fact that the '084 Patent was

---

[10] Altum cites its post-hearing response brief in the District Court (R.69) to support its validity argument, where Altum merely stated in passing in a reply brief that the District Court had two options—to adopt Altum's interpretation or find the '084 Patent invalid. (R.69 at 1496-97.) But, Altum never argued invalidity below. It is undisputed that Altum presented no evidence or argument to claim invalidity of the '084 Patent in its Opposition to the Motion for Injunction, at the preliminary injunction hearing, or its post-hearing brief. (Appx0014.)

[11] Perhaps the best demonstration of the dissimilarities in Rauenbusch and the '084 Patent are their illustrations. (*Compare* Appx0033 at Fig. 1 *with* Appx0277 at Fig. 1.)

rejected four times is irrelevant to the analysis. The Court focuses on "the claims as allowed . . . and it is not for the courts to say that they contain limitations which are not in them." *Intervet Am., Inc.*, 887 F.2d at 1054.

Accordingly, Altum's "warning" to the District Court is misguided, just like its prosecution disclaimer argument. Altum did not establish a substantial question as to infringement, and the District Court did not err in finding that the Accused Door infringes the '084 Patent.

### III.    Ridge Proved Irreparable Harm and that the Injunction Weighs In Favor of the Public Interest.

Altum cannot show that the District Court abused its discretion when it found that the balance of the equities weighs in Ridge's favor. Altum argues that 1) Ridge did not prove any specific irreparable harm and 2) the harm to Altum and the public outweighs any harm to Ridge. But, these arguments are incorrect because the record is full of specific irreparable harms to Ridge. And as the infringers, Altum and KNL cannot complain that their infringing conduct has caused lost business on the infringing product line.

### A.    Ridge Presented Specific Evidence of its Irreparable Harm.

Although Altum attempts to minimize Ridge's irreparable harm, the record does not support their arguments. Altum cannot show that the District Court abused its discretion in finding irreparable harm to Ridge.

It is well-established in the Sixth Circuit that loss of customer goodwill and delayed entry into the market are irreparable harms. *Southern Glazer's Distribs. of Ohio, LLC*, 860 F.3d at 852-853 (stating "loss of customer goodwill is a prime example of intangible, irreparable harm" and finding the irreparable harm factor weighed in the plaintiff's favor); *Lexington-Fayette Urban County Gov't v. Bellsouth Telcoms., Inc.*, 14 Fed. Appx. 636, 639 (6th Cir.) (finding "no abuse of discretion in the district court's characterization of loss of customers and delayed entry into the market as irreparable harm.")

The Federal Circuit has also acknowledged that loss of access to the market and to customers constitutes irreparable harm. *Abbott Labs.*, Inc., 544 F.3d at 1361-62 (finding loss of revenue and market share to be irreparable harms); *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) ("Given the testimony of the likelihood of price erosion and loss of market position without corresponding market expansion from the introduction of [defendant's] product, we see no deficiency in the district court's finding of irreparable harm."); *Metalcraft of Mayville v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017) (affirming a finding of irreparable harm "because it is impossible to quantify the damages caused by the loss of a potentially lifelong customer.").

Moreover, "courts routinely find irreparable harm when the infringer and patent holder are direct competitors." *Summit Indus. Supply, LLC*, 2021 U.S. Dist. LEXIS 134399 at *5 (citing *Bendix Comer. Vehicle, Sys., LLC v. Haldex Brake Prod. Corp.*, No. 1:09cv176, 2011 U.S. Dist. LEXIS 312 (N.D. Ohio Jan. 3, 2011)). "Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Terves LLC v. Yueyang Aero. New Materials Co.*, No. 1:19-CV-1611, 2022 U.S. Dist. LEXIS 129059, at *4 (N.D. Ohio July 20, 2022) (quoting *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013)).

Here, Ridge proved that Altum, as a direct competitor of Ridge, has aided KNL in manufacturing and selling the Accused Door. As to loss of market share, Ridge presented evidence that KNL and Altum were actively working to expand their market share on roll-up doors, via an Exclusive Supply Agreement in which KNL and Altum contractually agreed to expand sales of the Accused Door. (Appx1224-1226; Appx0514-515, Tr. 230:5-231:7; Appx0857, Tr. 573:7-16.) Altum's CEO Dominic Grandominico testified that Altum and KNL were in discussions to produce a higher volume of panels, and Altum anticipated increasing production from 25 panels per week to 115 panels per week in 2024. (Appx0851, Tr. 567:16-19.) The harm of those expansion efforts were all the

54

more irreparable to Ridge because KNL had repeatedly and systematically tainted the market by falsely representing that KNL owned a patent for the Accused Door. (*See* Appx1238-1239; Appx1241-1259.)

As to lost customers, Altum disrupted Ridge's business relationships. Ridge proved that Altum poached Ridge's former customer, KNL. Altum's founders, as former Ridge employees, knew of Ridge's long-term efforts and investment with roll-up doors. (*See e.g.*, Appx0660, Tr. 376:5-16; Appx0634-635, Tr. 350:17-351:21; Appx0661, Tr. 377:15-25.) When approached by KNL to assist with making prototypes of the Accused Door and become a long-term partner to sell panels to KNL, KNL advised Altum of its work with Ridge on this project. (*E.g.*, Appx0483, Tr. 199:13-25.) Altum sought and received KNL's business based upon the thermoplastics knowledge its founders had acquired during their tenure at Ridge. (Appx0483-484, Tr. 199:13-200-23; Appx0661, Tr. 377:15-2; Appx0773, Tr. 489:8-10.)

It is no coincidence that four days after Altum met with KNL on September 8, 2022, the KNL Defendants became combative with Ridge over correcting the designated inventors of the '144 Patent Application and became slow to respond to Ridge's emails and phone calls. (*Compare* Appx1310-1311 *with* Appx1305-1309; Appx0659-660, Tr. 375:15-376:4.) In the words of Ridge CEO Gary Grandominico, when Altum and KNL Defendants started working

together, "there was disruption in the cooperation between [KNL] and [Ridge] to develop and market a roll-up door." (Appx0662, Tr. 378:7-10.)

Ridge also proved that KNL directly thwarted Ridge's attempts to go to market with its roll-up door. KNL sent the Barnes Letter to Ridge's business partner, Whiting Door Manufacturing Corp. ("**Whiting Door**"), threatening royalty damages for Whiting Door's manufacture of a roll-up door with Ridge. (Appx0167-168; Appx0517, Tr. 233:9-234:21.) The Barnes Letter was an empty threat, however, because KNL amended the '144 Patent Application days after the letter in such a way that precluded any royalty damages. (Appx0393, Tr. 109:10-20.) The Barnes Letter continues to have a lasting impact on Ridge and Whiting Door's relationship—it put a complete stop to progress on working together to market a door under the '084 Patent. (Appx0674, Tr. 390:3-14; Appx0675, Tr. 391:11-20 (to paraphrase, Whiting Door hired a patent lawyer out of concern over KNL's spurious claims, and everything is on hold).) Contrary to Altum's assertion that Ridge's business is "thriving" because of its business with Whiting Door (Doc. 30, p. 57), Ridge's business with Whiting Door has halted because of Altum's and KNL's conduct. (Appx0674, Tr. 390:5-14.)

Ridge showed that KNL contacted various customers and represented that the Accused Door was patented when it was not. (*See* Appx0491, Tr.

207:21-25.) Altum argues that the harm from KNL's false marking does not support the injunction. (Doc. 30, p. 57.) This is incorrect. Altum ignores the fact that 35 U.S.C. §271(a) reads: "whoever without authority makes, uses, **offers to sell**, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." (emphasis added). "An offer to sell is a distinct act of infringement separate from an actual sale. . . . [A]n offer to sell need not be accepted to constitute an act of infringement." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296, 1308 (Fed. Cir. 2010) (citing *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005)). Here, KNL sent various targeted emails to new customers and existing customers to gauge their interest in purchasing KNL's "patented" single panel roll-up door. (Appx0492-504; Appx1238-1239; Appx1241-1259.) In each of the emails, KNL offered to sell the Accused Door to a prospective or existing customer. This is a violation of 35 U.S.C. §271(a) and, thus, supports the District Court's Injunction Ruling.

Accordingly, Ridge's harm is not "speculative," as Altum argues.[12] Ridge has proved specific, irreparable losses of access to the market and access to

---

[12] In arguing that Ridge's harm is speculative, Altum misconstrues *Takeda Pharms. U.S.A.* as requiring the District Court to articulate proof of irreparable

customers. The Sixth Circuit and the Federal Circuit have repeatedly found these losses to constitute irreparable harm.

**B.    Any Harm to Altum is Irrelevant, and the Public Interest Weighs in Favor of the Injunction**.

Altum argues that its irreparable harm must outweigh the harm to Ridge and that the injunction harms the public. (Doc. 30, p. 58-61.) This is not true. As to Altum's alleged irreparable harm, Altum cherry-picks from *Ill. Tool Works, Inc.* in an attempt to support its argument, when the case actually says:

> The hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating. On the other hand, the hardship on a patentee denied an injunction after showing a strong likelihood of success on validity and infringement consists in a frequently and equally serious delay in the exercise of his limited-in-time property right to exclude. Neither hardship can be controlling in all cases.

*Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990). It is well established that "requiring a patentee to compete against its own patented invention * * * places a substantial hardship on the patentee[.]" *Apple Inc. v. Samsung*, 809 F.3d 633, 645 (Fed. Cir. 2015) (citation omitted). Thus, "[o]ne

---

harm (Doc. 30, p. 56-57), when really the full quote (which is actually from a different case) reads: "[S]ince Frank's GMC [the plaintiff] has failed to articulate and adduce proof of actual or imminent harm. . .." *Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1349 (Fed. Cir. 2020) (quoting *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102-03 (3rd Cir. 1988)).

who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Summit,* 2021 U.S. Dist. LEXIS 134399, at *7 (citation omitted); *LEGO,* 799 Fed. Appx. at 832 ("'[I]t is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product.'") (quoting *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012)).

Altum elected to work with KNL, who it knew was Ridge's former customer, to produce the Accused Door, which it knew was an invention that Ridge was pursuing. Altum failed to cease-and-desist when Ridge formally alerted it of Ridge's intellectual property rights. At every avenue that it was given to correct its conduct, Altum chose the opposite direction. Now, Altum cannot complain that its infringing conduct will harm its business—a business that was built on the back of Ridge.

As to the alleged harm to the public, "[t]here is 'a strong interest in protecting intellectual property rights.'" *ArtiCure, Inc. v. Jian Meng*, 2020 U.S. App. LEXIS 23763, *4 (6th Cir. July 27, 2020) (quoting *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 854 (N.D. Cal. 2019)); *Lackner Co. v. Quehl Sign Co.*, 145 F.2d 932, 934 (6th Cir. 1944) ("The exclusive right conferred by a patent is a monopoly permitted only because of the public benefit to be derived from the invention. The maintenance of the public interest is the dominant concern of the

patent law[.]"). Altum failed to present any evidence that the public interest weighs in its favor. In contrast, Ridge did present this evidence, and Altum now attempts to use it in its favor.

Ridge showed that there is a need for a roll-up door in the transportation industry. (Appx0333, Tr. 49:2-14.) Ridge also showed that there is a need for a properly tested, reliable, quality-controlled product on the market. Ridge CEO Gary Grandominico testified that rushing to market with a product that has not been properly tested is the "kind of mistake [that] lives for years in the market" because it affects customer attitudes on the fundamental viability of the product category itself, not merely source-to-source variations in quality and dependability. (Appx0663-665, Tr. 379:21-381:16.) KNL has not engaged in the necessary quality assurance testing, thus putting the entire roll-up door product category at risk for failure in the market. (Appx0529-530, Tr. 245:18-246:7.) Thus, the public interest weighs in favor of protecting Ridge's intellectual property rights over the '084 Patent and allowing it to put a safe and reliable product on the market.

Accordingly, Altum cannot show that the balance of the equities weighs in its favor when it elected to infringe on the '084 Patent. The District Court did not abuse its discretion in finding that the equitable factors weigh in Ridge's favor.

## CONCLUSION

For the reasons explained above, the District Court did not err in awarding the preliminary injunction to Ridge and the Injunction Ruling should be affirmed.

Respectfully submitted,

/s/ *Christopher Tackett*
Christopher W. Tackett (0087776)
Graycen M. Wood (0102160)
**Bailey Cavalieri LLC**
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
Phone: 614.229.3286
Fax: 614.221.0479
ctackett@baileycav.com
gwood@baileycav.com

*Counsel for Appellee Ridge Corporation*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-1138

**Short Case Caption:** Ridge Corp. v Kirk NationaLease Co.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 13,690 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/12/2024

Signature: /s/ Christopher Tackett

Name: Christopher Tackett

Save for Filing

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number**  24-1138

**Short Case Caption**  Ridge Corp. v. Kirk NationaLease Co.

---

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

---

I certify that I served a copy of the foregoing filing on  01/12/2024

by  ☐ U.S. Mail    ☐ Hand Delivery    ☑ Email    ☐ Facsimile
    ☐ Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| | See attached page. |
| | |
| | |
| | |
| | |

☑    Additional pages attached.

Date: 01/12/2024

Signature:  /s/ Christopher Tackett

Name:  Christopher Tackett

| **Person Served** | **Service Location (Address, Facsimile, Email)** |
|---|---|
| Damion M. Clifford | dclifford@arnlaw.com |
| Gerhardt A. Gosnell II | ggosnell@arnlaw.com |
| Michael L. Dillard, Jr. | mdillard@arnlaw.com |
| Tiffany L. Carwile | tcarwile@arnlaw.com |
| Donald E. Burton | dburton@ficlaw.com |
| Melissa L. Watt | mwatt@ficlaw.com |
| Joshua A. Koltak | jkoltak@fgks-law.com |
| Michael J. Scarpelli | mscarpelli@fgks-law.com |